REINHARD *et al.*, *Appellants*, v. THE VIRGINIA LEAD MINING COMPANY *et al.*

DIVISION TWO.

**Corporation, Conveyance to: ESTOPPEL.** Where a grantor for a valuable consideration and in good faith conveys land by deed duly recorded to a company named therein as the grantee, he and his subsequent grantees are estopped to deny the capacity of such grantee to take lands as against it and its grantees, although owing to a mistake of the attorney the incorporation of the association was not perfected until after the conveyance.

*Appeal from Franklin Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*J. C. Kiskaddon* for appellants.

(1) For the grant of an immediate estate in possession the grantee must be *in esse*, and the deed may be avoided by showing that the grantee came into being

after the delivery of the deed. *Hulick v. Scovill*, 4 Gilm. (Ill.) 191 ; *Miller v. Chittenden*, 2 Iowa, 368 ; *Hall v. Leonard*, 1 Pick. (Mass.) 27 ; *Morris v. Stephens*, 46 Pa. St. 200 ; *Hornbeck v. Westbrook*, 9 Johns. (N. Y.) 73 ; *Chase v. Palmer*, 29 Ill. 306 ; *Douthitt v. Stinson*, 63 Mo. 268 ; *Frank v. Drinkhahn*, 76 Mo. 508. ( 2 ) Under the general corporation laws of Missouri a corporation is *in esse* only from the time of filing its certificate of incorporation in the office of the secretary of state ; or, in the case at bar, perhaps from the time it is recorded in the office of the recorder of deeds. 1 Wag. Stat. 1872, p. 333, sec. 2 ; sec. 4. p. 289 ; *Hurt v. Salisbury*, 55 Mo. 310 ; *Richardson v. Pitts*, 71 Mo. 128 ; *Martin v. Fewell*, 79 Mo. 401 ; *Smith v. Warden*, 86 Mo. 382. ( 3 ) A party sued by something bearing an apparently corporate name on a contract made with it in that name may deny that it is a corporation, or may allege that it is not a corporation. If it was not in existence at the time the contract was made it follows necessarily that no contract was made. It takes at least two parties to make a contract. If there was only one party it is no contract, and an estoppel cannot create a party which never existed. *Dobsons v. Simondson*, 86 N. C. 492 ; *Norwood's Case*, 32 Hun (N. Y.) 196 ; *McCulloch v. Norwood*, 58 N. Y. 384 ; *Hoereth v. Franklin*, 30 Ill. 151 , *Thornton v. Marg. Frt. Co.*, 123 Mass. 32. ( 4 ) To constitute a corporation *de facto* there must be a name apparently corporate, there must be a corporate form of organization, there must be a color of right to exercise corporate franchises emanating, from the state, and there must be the exercise of corporate powers under such color of right. *Hoereth v. Franklin*, 30 Ill. 151 ; *Harriman v. Southam*, 16 Ind. 190 ; *Type Foundry v. Jones*, 14 Ind. 89. ( 5 ) The want of existence of an organization assuming to be a corporation can be taken advantage of collaterally, where it has omitted conditions precedent to its valid organization. It is not a question of the regularity of

the organization, it is a question of corporate existence. *Granby Mining Co. v. Richards*, 95 Mo. 106; *Harris v. McGregor*, 29 Cal. 124; *McIntire v. McLean Ass'n*, 40 Ind. 104; *Furniture Co. v. Herkimer*, 46 Ind. 142; *Cleg v. Co.*, 61 Iowa, 121; *Kaiser v. Bank*, 56 Iowa, 104; *Gent v. Ins. Co.*, 107 Ill. 652; *Garnett v. Richardson*, 35 Ark. 144. (6) An invalid deed works no estoppel to anybody. *Mason v. Mason*, 140 Mass. 63; *James v. Wilder*, 25 Minn. 305; *Sherlen v. Whelen*, 41 Wis. 88. (7) An estoppel must be mutual. If it binds one party it must bind the other. But a contract made with a corporation before it comes into existence does not bind it, although it may have received the benefit of it. *Railroad v. Sage*, 65 Ill. 328; *Ins. Co. v. Hart*, 31 Md. 59; *Match Factory v. Hapgood*, 141 Mass. 145. (8) The grantee in a deed poll holds adversely to his grantor and all the world, and can dispute everybody's title except his own. *Macklot v. Dubreuil*, 9 Mo. 476; *Joeckel v. Easton*, 11 Mo. 119; *Blair v. Smith*, 16 Mo. 273; *Cutter v. Waddingham*, 33 Mo. 272. (9) Where a grantor makes two deeds of the same property to two grantees, the second grantee is not estopped from questioning the validity of the deed to the first grantee. It is not a question of estoppel at all; but it is a question of which grantee, the first or second, got the title of the grantor. If the first grantee had no existence, either *de jure* or *de facto*, then the second grantee gets the title. Bigelow on Estop. [5 Ed.] 345, *et seq.; Cook v. Parham*, 63 Ala. 456; *Scates v. King*, 110 Ill. 456; *Weyh v. Boylan*, 85 N. Y. 394; *Gorton v. Roach*, 46 Mich. 294. (10) It is a mistake to say that the defendant is estopped to deny the corporation. His contract is *prima facie* evidence of the corporation, and, if nothing more is offered, is conclusive. Mor. on Corp. [1 Ed.] sec. 138; *Harriman v. Southam*, 16 Ind. 190; *Jones v. Type Foundry*, 14 Ind. 89; *Bank v. Willard*, 25 N. Y. 574; *Bank v. Bank*, 21 N. Y. 572. (11) Under the evidence the possession of the plaintiffs

was sufficient to maintain this suit.   *Campbell v. Allen,*
61 Mo. 581 ; *Dyer v. Krakauer,* 14 Mo. App. 39 ; *Bank
v. Chambers,* 96 Mo. 459 ; *Railroad v. Dewess,* 23 Fed.
Rep. 519 ; *Douglass v. Nuzum,* 16 Kan. 515.   ( 12 )
The deeds and records attacked by plaintiffs in this
proceeding are clouds on their title.   *Bank v. Evans,*
51 Mo. 335 ; *State, etc., v. Philips,* 97 Mo. 331.   ·

*John W. Booth* and *T. B. Crews* for respondents.

( 1 )   A corporation *de facto* ( not being a corpora-
tion *de jure* ) is a corporation formed and existing
without legal authority.  2 Morawetz on Private Corpo-
rations [ 2 Ed.] section 746, says of such a corporation :
" A corporation actually in existence can enter into a
contract, though the association may have been formed
without authority and its acts be forbidden by law, and
the legal validity of such contracts will depend wholly
upon the effect of the legal prohibition." Secs. 745, 747.
" If the corporate association has been actually formed
in violation of law, the courts can generally best serve
the interests of justice by recognizing the association as
a corporation, although an unlawful one, until its
actual existence has been terminated by direct means."
( 2 )   A grantor who has conveyed property to a corpo-
ration existing *de facto* cannot, after having received
the purchase money, treat the conveyance as a nullity
merely because the corporation was formed without
legislative authority.   The transaction will be held
valid and binding against all persons but the state.   2
Morawetz on Private Corporations [ 2 Ed.] sec. 753 ;
*Ragan v. McElroy,* 94 Mo. 349 ; *Smith v. Sheely,* 12
Wallace ( U. S.) 358.   ( 3 )   Nathaniel Sands, Francis
A. Sands and R. R. Hazard, having executed articles
of association for the formation of a corporation under
the laws of the state of Missouri, and duly acknowl-
edged the same, and having thereupon organized the

board of directors, and elected officers of said association, and proceeded by the name of the Virginia Lead Mining Company to buy and take a conveyance of said land from Maupin, to the Virginia Lead Mining Company, and Maupin having dealt with such association as a corporation, sold and conveyed said land to the Virginia Lead Mining Company as a corporation, and received the consideration therefor, and Maupin's conveyance to the Virginia Lead Mining Company being duly filed for record in the office of the recorder of deeds of the proper county, as against Maupin and all persons claiming said lands in privity with him by rights derived after the filing for record of Maupin's deed, the Virginia Lead Mining Company must be held to have been a corporation *de facto* at the time Maupin made his conveyance to it.   See authorities cited under point 2.   (4)   When Maupin sold and conveyed the land to the Virginia Lead Mining Company, the appellants were strangers to the transaction and owned no interest in the land, and hence had no right to call in question the legality of the corporation or its right to take and hold the title to the land.   *Bank v. Matthews*, 98 U. S. 621, 628.   Having no connection with that transaction now, except such as is derived to them under a sale on execution against Maupin, on a judgment rendered long after Maupin's conveyance to the Virginia Lead Mining Company was duly filed for record, they have no standing in court except as privies of Maupin, and are estopped with Maupin. Such an estoppel makes part of the title to land and extends to all who claim under either of the parties. Bigelow on Estoppels [1 Ed.] pp. 73, 74.   (6)   Where parties attempt to organize a corporation under authority of a general law providing for the formation of corporations, and to that end execute and acknowledge articles setting forth their intention so that it may be clearly known therefrom by what right or claim they assume to act and having executed such articles proceed

to form a corporate organization under the name pro--
vided for in the articles, elect officers and thenceforth,
do all their acts in the corporate name and by elected
corporate officers, but without fully complying with.
the conditions of such statute, their exercise of corpo-
rate powers cannot be said to be authorized by the stat--
ute; but in the fullest sense of the words they may be-
said to be exercising corporate powers under color of
right under such statute, especially when as in this case-
their good faith is evidenced by their prompt and full
compliance with the omitted conditions, as soon as the-
fact that conditions are not complied with is discovered
by them. *Snyder v. Studebaker*, 19 Ind. 462 ; *Railroad*
*v. Church*, 137 U. S. 568.

MACFARLANE, J.—This is a suit in equity to quiet
the title to certain real estate of which plaintiffs claim
they are the owners.

The material facts are undisputed. On the nine--
teenth day of December, 1872, Nathaniel Sands and
Rowland R. Hazard, in the city of New York, executed
and acknowledged in due form a certificate in writing for
the purpose of incorporating under the laws of the state
of Missouri a mining company, and adopted as the cor-
porate name, "The Virginia Lead Mining Company."
This certificate of incorporation shows a full compliance
with the laws of this state up to and including its proper
acknowledgment. Instead of having the certificate-
recorded, by the recorder of deeds of the county as
required by section 2, article 7, chapter 37, Wagner
Statutes, page 333, it was sent to the clerk of the county
court for record, where it remained until May 19, 1874,
when the incorporators learning the mistake had it filed
and recorded by the proper officer, and on August 8, 1874,.
also had a copy filed and recorded with the secretary of
state, on which day a certificate of incorporation was.
issued.

It is agreed that the land in suit on the twenty-eighth day of December, 1872, belonged to defendant, Amos W. Maupin. On that day Nathan Sands, one of the parties so attempting to incorporate, and representing the supposed corporation, purchased the land from Maupin, paying therefor $2,500. The deed was made to "'The Virginia Lead Mining Company," as grantee. This deed was recorded April 22, 1873. On the twenty-eighth day of September, 1873, said supposed corporaration, by persons representing to be its proper officers, in due form of law, made a deed of conveyance of the land to Robert C. Sands, which was recorded June 24, 1874.

On the eleventh day of December, 1879, defendant, Robert C. Sands, made a deed purporting to convey said lands to defendant, the Missouri Lead Mining & Smelting Company, a corporation under the laws of Great Britian. This deed was recorded December 17, 1879. The last-named corporation conveyed the land to defendants, George Hopkins and Samuel Pope, as trustees, to secure certain bonds issued by the company. These parties are all made defendants.

On the twenty-eighth of November, 1879, a judgment was rendered in the circuit court of said county against the said Maupin. Under an execution upon this judgment the land was sold to Frederick W. Reinhard, to whom a deed was executed June 5, 1885. The said Reinhard, on June 15, 1885, conveyed the lands to plaintiffs. Plaintiffs complain that all the deeds to and from defendants cast a cloud upon their title, and pray that their title be quieted and said deeds be declared inoperative and void.

The organizers of the first corporation were not informed that the articles of incorporation had not been filed and recorded until May, 1874. Upon making the certificate of incorporation, the parties thereto proceeded to the organization of the board of directors and elected officers, and thereafter assumed to act as a corporation,

under the name of "The Virginia Lead Mining Company." The business was conducted in accordance with the laws governing corporations in the state of Missouri. The error in sending the certificate to the county clerk, instead of the recorder, was made by the attorney of the promoters, and as soon as the mistake was discovered it was corrected. These facts were alleged in the answer of defendant. Upon a trial, plaintiffs' bill was dismissed and judgment was entered for defendants, and plaintiffs appeal.

It is readily seen, from the foregoing statement, that the controverted question in this case hinges on the proper effect to be given the deed from Amos W. Maupin to the Virginia Lead Mining Company. This deed was made and recorded, as also was the certificate of incorporation, long prior to the judgment against Maupin, under which plaintiffs claim title, and consequently there can be no question of the want of notice of this deed when plaintiffs' ancestor bought under execution. No offer is made by plaintiffs to refund the purchase money. They rely for relief on the naked legal proposition that the deed from Maupin to the mining company is absolutely null and void, because the corporation at the time did not have the capacity to take the title. Defendants, on the other hand, insist that the corporation existed, *de facto*, at the time of the execution of the deed, and it, therefore, passed the title; and that though it may not have been even a *de facto* corporation, still Maupin and his grantees are, under the circumstances, estopped to question its validity.

Plaintiffs assert their supposed wrongs, and seek relief in a court of equity. They virtually admit that their grantor sold the land in good faith, presumably for its full value, accepted the money, and made a deed, believing at the time, and intending, to part with the title and vest it in the corporation. The promoters of the corporation purchased the land, and paid out their

money, under the belief that the corporation was authorized, at that time, to hold the title. They acted, as was supposed, in full compliance with the laws of the state provided for the management of corporations. The demands of plaintiffs do not commend themselves to a court of equity, and, unless the court is fettered by legal principles, they should not be heard to assert them.

The legal principles invoked by plaintiffs are, *first*, in order to a valid and effectual conveyance of land there must be a grantee in being at the time of the delivery of the deed ; and, *second*, a corporation has no existence until after a full performance of every requirement of the law, under which it is authorized. Both these propositions have support in decisions of this court.

It has been held, in this state, as at common law, that a deed will not take effect, or have any validity, as a conveyance of the property, unless the grantee therein is in being at its delivery. A deed to W. H. Phelps & Co., which was a partnership firm, composed of Phelps and two others, was held to pass no title to the firm, or the two persons not named. *Arthur v. Weston*, 22 Mo. 379. So it was held in *Douthitt v. Stinson*, 63 Mo. 268, that a deed to a pretended corporation, which had no real existence, was absolutely void. In *Thomas v. Wyatt*, 25 Mo. 24, a patent issued to a fictitious person was held to be a nullity. A deed to the directors of a corporation which was named therein, which then had no existence, but was subsequently organized, was held to pass no title to the corporation.

These decisions were all made in actions at law. Judge Leonard qualifies his decision, in the case first cited, by the remark : "We must not, however, be misunderstood ; our present decision refers to the transfer of the legal estate only, and does not touch the equitable rights of the parties growing out of the transaction."

It has also been held that a corporation is not fully authorized to transact the business for which it was

created, until the articles of association had been filed
with the secretary of state, and a note executed by the
directors, signing their names as such before filing the
articles with the secretary, became the personal note of
the directors, and did not bind the corporation. *Hurt
v. Salisbury*, 55 Mo. 312. This decision was approved
in the subsequent cases of *Martin v. Fewell*, 79 Mo.
401, and *Richardson v. Pitts*, 71 Mo. 129. On the
other hand in *Granby Mining Co. v. Richards*, 95 Mo.
110, it was held that the failure to file a certificate of
incorporation with the circuit clerk, as was required
by the statute, was an "omission of which the state
alone should complain." The suggestion was made in
that case, that the rule of *Hurt v. Salisbury, supra,*
should not be extended. These suits were against
persons assuming to act as officers of corporations,
which had not fully organized for the transaction of
business.

We do not regard these lines of decisions as bear-
ing upon the question in this case, or as inconsistent
with the doctrine of estoppel invoked by defendants.
The grantors of plaintiffs dealt with the officers of this
corporation in the corporate name, received the money
of the supposed corporation, and undertook to convey
the land to it in consideration thereof. The question
here is, as has been suggested, whether plaintiffs occupy
a situation in which they can deny the validity of the
corporation or its acts. This question, we think, well
settled in this state, and there is no necessity of inquir-
ing whether, or not, this was a *de facto* corporation,
capable of taking the title of land by grant.

The facts in the case of *Broadwell v. Merritt*, 87 Mo.
99, are very similar to those in the case under consider-
ation. The articles of association were written, signed,
acknowledged and recorded as required by the statute,
but a copy was not filed with the secretary of state,
which was also required. The business of the attempted
organization was, with others, that of buying and selling

real estate. The officers of the corporation bought a tract of land from one Little, and the deed was made to the corporation. Some years after that, the organization of the corporation was perfected, by filing with the secretary of state a copy of the articles as required. Before this was done, however, and about six years after making the deed to the corporation, Little conveyed the land by quitclaim deed to Broadwell, who sued the grantee of the corporation in ejectment. It was held that the validity of the corporation could not be challenged by plaintiff, on the ground that there was no grantee therein competent to take the title.' The court in that case speaking through Judge RAY says: "We do not think that Little, after receiving the large and valuable consideratiou paid him for the land, and making his said deed to the association, and taking the trust deed from it, and putting it in possession thereof, and allowing it to be improved and held under his title for years, could, or ought to, be heard to call in question the capacity or power of the association to take title to the property, and hold or enjoy the same. Broadwell, who takes under Little, under his said subsequent deed, is in no better position. He is in privity with, and bound and estopped by what would bind and estop, said grantor." A number of cases of this, and the United States supreme court are cited in support of the proposition.

This decision was followed and approved in *Ragan v. McElroy*, 98 Mo. 350, in which also a deed to a corporation was objected to, on the ground that it had not been shown that the corporation was properly organized. It was held that the grantor, and his heirs were forever estopped from denying the corporate existence of the grantee, as against those who have acquired title and possession under that deed. In a similar case in the United States supreme court, Mr. Justice DAVIS says: "No proposition is more thoroughly settled than this, and it is unnecessary to

The State ex rel. Scotland Co. v. Bacon.

refer to authorities to support it. Conceding the bank to be guilty of usurpation, it was still a body corporate, *de facto*, exercising at least one of the franchises, which the legislature attempted to confer upon it, and in such a case the party who makes a sale of real estate to it is not in a position to question its capacity to take the title, after it has paid the consideration for the purchase." *Smith v. Sheeley*, 12 Wall. 350; *National Bank v. Matthews*, 98 U. S. 621. These decisions commend themselves as being founded on the soundest principles of equity and right.

It is true, as insisted, that no question of estoppel can arise under a deed which is absolutely void. This proposition was distinctly held in *Douthitt v. Stinson*, *supra*. In that case, however, there was no law authorizing the formation of the corporation to which attempt was made to convey the land. Estoppel applies to the regularity of the organization of the corporation, and can only apply when there is authority of law to organize. *Jones v. Type Foundry Co.*, 14 Ind. 89. The statutes of this state gave ample authority for the organization of the Virginia Lead Mining Company, and plaintiffs are estopped to deny the regularity of its organization. Judgment affirmed. All concur.