HENRY F. ROLL, Respondent, v. THE ST. LOUIS & COLORADO SMELTING & MINING COMPANY, Appellant.

St. Louis Court of Appeals, December 20, 1892.

1. **Foreign Law:** PRESUMPTIONS. A foreign law must be proved like any other fact, and, in the absence of such proof, it will be assumed that the common law prevails in the foreign jurisdiction.

2. **Corporations:** VALIDITY OF INCORPORATION. At common law no registry of the charter of a corporation is requisite.

3. ———: ———: ESTOPPEL. A corporation was formed under the laws of a foreign state, under which the registry of the certificate of incorporation was essential. It entered into a contract as a corporation prior to such registry, but completed its organization by such registry prior to the institution of a suit upon the contract. *Held*, in the course of discussion, that it was estopped in that suit from denying the validity of its incorporation.

4. ———: ENFORCEMENT OF CONTRACT FOR ISSUE OF CORPORATE SHARES FOR LESS THAN FULL VALUE. When a corporation contracts to issue corporate shares for a consideration, the fact, that this consideration does not amount to the full value of the shares, is of no consequence in an action by the shareholder against the corporation for the enforcement of the contract.

5. **Practice, Appellate:** COSTS, In a suit in equity the question of the costs of an appeal is to some extent within the discretion of the court. In this cause, wherein the respondent was successful on the main issue, they were taxed against the appellant and respondent in equal shares.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED *(with modification of decree)*.

*Bashaw & Isbell*, for appellant.

(1) Under the law of Illinois the defendant company had no corporate existence, and was not authorized to proceed to the transaction of any business, until its certificate of incorporation was recorded in the office of the recorder of deeds of St. Clair county, its principal office being located in that county. Act approved April 18, 1872, sec. 4. (2) The failure to record the certificate is not a mere irregularity; it is a vital defect, and there was no authority to do business until the certificate was recorded. What was undertaken was, therefore, of no effect, and the corporation is not bound by it. *Hunt v. Salisbury*, 55 Mo. 310; *Smith v. Warden*, 86 Mo. 382;

*Martin v. Tewell*, 79 Mo. 401. (3) There are no facts shown in evidence that a court of equity would say should estop the company from setting up the invalidity of the issue of the certificates of stock claimed by plaintiff. (4) There is no equity in plaintiff's claim. He paid nothing for the stock either to Thomas or the company. Nor did Thomas pay anything therefor to the company. It would, therefore, be unjust to other shareholders to compel an issue of the stock.

*Fred. Wislizenus*, for respondent.

(1) The evidence shows that Thomas properly acquired the stock from defendant, and that plaintiff properly acquired title from Thomas. (2) There is no evidence of laches in the record. (3) A foreign law must be proved like any other fact. *Conrad v. Fisher*, 37 Mo. App. 352; *Hartman v. Railroad*, 39 Mo. App. 58; *Benne v. Schnecko*, 100 Mo. 580. (4) A corporation is estopped from setting up irregularity in its creation as a defense to claims, arising out of transactions in which the defendant corporation assumed to have full corporate powers. *Reinhard v. Mining Co.*, 107 Mo. 616; *Finch v. Ullmann*, 105 Mo. 263; *Mining Co. v. Richards*, 95 Mo. 112; Morawetz on Private Corporations, sec. 753; *McCarthy v. Lavasche*, 89 Ill. 275.

ROMBAUER, P. J.—This is a suit in equity having for its object to compel the defendant corporation either to issue to the plaintiff new certificates for twenty thousand shares of its capital stock in lieu of certificates for the same amount issued originally to one J. M. Thomas, and assigned by Thomas to the plaintiff, or, in case that should be found impracticable, to pay him the value thereof, which the petition states to be

$20,000. The petition does not state in terms that plaintiff ever paid any value for such certificates, or that the corporation ever received any value therefor, but does state that plaintiff is the lawful holder thereof; that he tendered them for surrender to the corporation; that he demanded a reissue in his own name, and that, upon such reissue being refused, he brings this suit. The answer admits that the defendant is now incorporated under the laws of the state of Illinois, and that the certificates of stock mentioned in plaintiff's petition were issued to Thomas before the defendant had any corporate existence; and it states in addition that the defendant never received from the plaintiff or any other person any money or its equivalent for said certificates, and that the plaintiff acquired said certificates with full knowledge of the foregoing facts. Upon the hearing the court made a decree, ordering the defendant either to deliver to the plaintiff within twenty days a *valid* certificate or certificates for twenty thousand shares of its capital stock, or, in case of failure so to do, to have judgment entered against it for the sum of $2,500. The sum thus named the court found to be the actual value of said twenty thousand shares.

The defendant assigns for error that, under the laws of the state of Illinois, the company had no legal existence when the certificates held by plaintiff were issued; that the company after full organization refused to ratify the issue of these shares; that the plaintiff has an adequate remedy at law against Thomas; and that there is no equity in plaintiff's claim, as neither he nor Thomas ever paid to the corporation any value for them.

We find the facts shown by the evidence to be as follows: J. M. Thomas, who appears to have been the original projector of this corporation, caused certain

parties to apply for incorporation under the laws of the state of Illinois as a mining and smelting corporation, with a capital stock of $3,000,000, divided into three hundred thousand shares of $10 each, of which he originally subscribed for two hundred and ninety-nine thousand, nine hundred and ninety-three shares and several other parties, of whom plaintiff was one, for one share each. The secretary of the state of Illinois, on July 31, 1889, issued a certificate stating that the company was legally organized under the laws of that state. The main office of the company was stated in the corporation certificate to be East St. Louis, in St. Clair county, Illinois. The certificate was not recorded in said county until August 30, 1889. On July 30, 1889, the proposed incorporators met and agreed to buy certain mining property located near Parrot City in the state of Colorado, value not shown anywhere, for $2,999,930, with an understanding subsequently carried out, that Thomas should retain in payment ninety-nine thousand, nine hundred and thirty of the shares of the company and re-transfer to the company two hundred thousand of them.

After the receipt of the secretary's certificate, but prior to its record in St. Clair county, Illinois, the company organized. One Bensieck was elected president and the plaintiff secretary of the company. The certificates in controversy were made out by the plaintiff in the name of Thomas, and signed by the president and himself. He went with them to Thomas, and demanded a transfer of them to himself in payment of certain services which he claimed he had rendered to Thomas in the organization of the company. The tender of these shares, according to the uncontradicted testimony of Thomas, was accompanied with the threat that, unless Thomas would assign these certificates to him, the plaintiff would not deliver to Thomas the bal-

ance of the shares to which Thomas was entitled, but would burst up the company.

On September 15, 1889, the board of directors met, and adopted the following resolution offered by Thomas who was one of the directors:

"Whereas, by an oversight of the secretary of this company, the certificate of the company organization of the corporation, duly authenticated under the hand of the secretary of state of the state of Illinois, and sealed with the seal of said state, dated the thirty-first day of July, 1889, was not filed in the office of the recorder of deeds of St. Clair county, state of Illinois, being the county where the principal office of this company is located, until the thirtieth day of August, 1889; and,

"Whereas, before said date last mentioned, this company, upon the assumption that it was fully organized and authorized to do business, did, in the name of the corporation, transact certain business; and,

"Whereas, the question as to whether or not said business was legal and binding upon the corporation is only a technical one, such as can be overcome by ratification on the part of the company;

"Now, therefore, be it resolved that the following contracts and acts, entered into in the name and on behalf of the company prior to August 30, 1889, be and the same are hereby ratified and adopted by the company, viz.:

"*First.* The contract with J. M. Thomas to build a smelting plant at Durango, Colorado, approved August 12, 1889, with the amendments and modifications of the same.

"*Also*, the approval of the bond of said Thomas, which said amendments and bond were submitted and approved September 9, 1889.

"And be it further resolved that all the certificates of stock issued by this company previous to August 30, 1889, be and the same are hereby declared void, and the secretary is hereby directed to call in and cancel all the certificates of stock heretofore issued, and again issue the stock anew to the subscribers the same as if it never had been issued.

"And be it further resolved, that all other acts and things done in the name of the corporation and on its behalf as shown by its minute book and record, or signed by the secretary and president, previous to the thirtieth day of August, 1889, except that heretofore stated, be and the same are now hereby fully approved, ratified and adopted as acts of the corporation."

The plaintiff was present when this resolution was adopted, but voted against it. Some time afterwards he presented the certificate of stock which he held to the officers of the company, demanding the issue of new certificates to him, which were refused. New stock certificates for two hundred and ninety-nine thousand, nine hundred and ninety-four shares were issued to Thomas under the above resolution, and certificates for one share each to six other parties. Thomas subsequently placed two hundred thousand of these shares into the treasury of the company, and from their sale a fund was realized, by the means of which a smelter was erected in Colorado. It appeared in evidence that the stock had no market value at the date of its issue, nor at the date when the suit was instituted, but that the entire property of the company might probably bring $30,000, if put up for sale.

It is evident from the above that there is no merit in the defendant's assignment of error that the company had no legal existence when the certificates held by the plaintiff were issued. The laws of the state of Illinois were not in evidence. A foreign law must be

proved like any other fact, and, in the absence of such proof, it will be assumed that the question is governed there by the principles of the common law. *Warren v. Lusk*, 16 Mo. 102; *Meyer v. McCabe*, 73 Mo. 236; *Benne v. Schnecko*, 100 Mo. 250. By the common law no registry of the charter of a corporation is required. But, even if we assume that plaintiff's evidence contains an admission that such a record was essential to a full organization of the company, the pleadings and evidence admit that the corporation was fully organized prior to the institution of this suit, and the corporation would be estopped as to any person with whom it contracted as a corporation from setting up its inchoate organization at the date of the contract. The authority of the cases of *Hurt v. Salisbury*, 55 Mo. 310, and *Richardson v. Pitts*, 71 Mo. 128, is questioned in the later decisions of *Granby Mining Co. v. Richards*, 95 Mo. 112; *Ragan v. McElroy*, 98 Mo. 350, and *Reinhard v. Mining Co.*, 107 Mo. 616, which by analogy lead to the above conclusion.

Nor is it an answer to plaintiff's claim that he has an adequate remedy at law against Thomas, since the fact that a complainant has a legal remedy against one person does in no way disprove the fact that he may have a legal or equitable remedy against another. The only question entitled to serious consideration is whether there is any equity in plaintiff's claim under the evidence, and whether the decree in its details is warranted by the facts found. It does not appear that Thomas himself ever gave to the corporation any money, or its equivalent, for the ninety-nine thousand, nine hundred and ninety-three shares which he retained of the original issue made to him, and of which the certificates for twenty thousand shares assigned to plaintiff form a part. On the other hand it does not appear that the corporation ever questioned or now questions

the title of Thomas to these shares. The controversy is not between creditors of the corporation and the plaintiff, but between the corporation and one of its stockholders, so that the question whether these shares were issued for *full* value is entitled to no consideration. That they were issued for *some* value is apparent from the fact that the company got some property in return, and has failed to show that such property was of no value. This leads us to conclude that the last assignment of error must likewise be overruled.

The only remaining question is whether the evidence warrants the decree in its details. The decree provides that the company shall issue to the plaintiff a *valid* certificate or certificates of stock for twenty thousand shares. This part of the decree goes beyond the prayer of the bill, which prays only for the issue of new certificates in lieu of those tendered for surrender. The insertion of the word *valid* may imply that the court, by its decree, determined that plaintiff, and not Thomas, is ultimately entitled to these shares, which fact was not before the court. The decree also finds the value of these shares to be $2,500, whereas the greatest value shown by the evidence is $2,000, putting the entire value of the company's property at $30,000. The decree will, therefore, be so modified as to require the defendant, within twenty days from the date of the modified judgment entry, to issue to the plaintiff a new certificate in the usual form for twenty thousand shares of the capital stock of the company in lieu of the certificates surrendered, or in case of its failure so to do that judgment be entered against it for the sum of $2,000.

It has been the practice of this court, where the appellant was successful in part, to award the costs of the appeal against the respondent. As this is a case in equity where the question of cost is to some extent

within the discretion of the court, and as the respondent is successful on the main question, we think we best exercise our discretion by ordering that the costs of the appeal be borne in equal shares by the appellant and respondent. It is so ordered. Judge THOMPSON concurs. Judge BIGGS, while concurring in the finding that the plaintiff, under the facts shown, is entitled to relief, dissents from the order awarding the specific relief.