THE WHITE OAK GROVE BENEVOLENT SOCIETY v. MURRAY, *et al., Appellants.*

Division Two, October 17, 1898.

1. **Deed to Unincorporated Company:** A deed to an unincorporated company does not convey the legal estate, but where a grantor conveys land to such company, and receives and retains the money of its members therefor, he will be estopped from denying the validity of the corporation or its powers to receive the grant. And when such company afterwards becomes legally incorporated with the same name, a suit by it to compel the grantor to make a new deed and to enjoin all interference by him will be upheld.

2. **Repudiating Deed:** A grantor can not repudiate his deed, while enjoying the purchase money.

*Appeal from Clay Circuit Court.*—HON. E. J. BROAD-DUS, Judge.

AFFIRMED.

*D. C. Allen* for appellants.

(1) There must be a person *in esse* to receive a conveyance in order make a deed good of an immediate estate. On April 12, 1889, respondent was not a person *in esse*. 3 Wash on Real Prop. [5 Ed.] 282; *Arthur v. Weston*, 22 Mo. 378; *Thomas v. Wyatt*, 25 Mo. 24; *Douthitt v. Stinson*, 63 Mo. 268; 2 Blackstone's Com. [Chitty's Ed.] 296. (2) Since general statutes were first passed in Missouri providing for the creation and organization of corporations, it has been universally true that a voluntary association has, in law or equity, no more corporate capacity, until after the initiatory steps towards its incorporation had been taken than such voluntary association had before those general statutes were enacted. Hence, it is plain that the line of decisions consisting of *Reinhard v. Va. Lead Mining Co.*, 107 Mo. 616; *Granby M. and S. Co. v. Richards*, 95 Mo. 106; *Broadwell v. Merritt*, 87 Mo. 95; *St. Louis G. L. Co. v. St. Louis*, 84 Mo. 202; *Studebaker Bros. Mfg. Co. v. Montgomery*, 74 Mo. 101; and *Stoutimore v. Clark*, 70 Mo. 471, does not apply to this case; but that *Douthitt v. Stinson*, 63 Mo. 268 does apply. (3) The deed of April 12, 1889, was a nullity and no question of an estoppel could arise under it. It takes two to make an estoppel. *Douthitt v. Stinson*, 63 Mo. 268; *Lumber Co. v. Oliver*, 65 Mo. App. 435. (4) On April 12, 1889, the White Oak Grove Benevolent Society was a mere voluntary association of individuals.

It was not a corporation *de facto* or *de jure*. The initiatory steps to incorporation were not taken until December 7, 1891. A grant made to it, therefore, on April 12, 1889, was void for want of a grantee. The so-called grantee is a fictitious person. *Jackson v. Cory,* 8 Johnson, 385; *Hornback v. Westbrook*, 9 Johnson, 73; *Thomas v. Wyatt*, 25 Mo. 24; *Thomas v. Boerner*, 25 Mo. 27; *Frank v. Drenkhahn*, 76 Mo. 508; *Catholic Church v. Tobbein*, 82 Mo. 418; 4 Kent Com. [9 Ed.] 540.

*Dougherty & Dougherty* for respondent.

(1) All of the decisions cited by counsel for appellants in the first paragraph of his brief are actions at law. This is an equitable proceeding. In *Arthur v. Weston*, 22 Mo. 378 the court said: "We must not, however, be misunderstood; our present decision refers to the transfer of the legal estate only, and does not touch the equitable rights of the parties growing out of the transaction." These words are quoted approvingly by Judge MACFARLANE in the case of *Reinhard v. The Virginia Lead Mining Co.*, 107 Mo. 616.

GANTT, P. J.—From a final judgment overruling a demurrer to the petition this appeal is prosecuted. The petition omitting caption is in these words:

"Plaintiff states that it is a corporation duly organized under and by virtue of the laws of the State of Missouri, and that on the twelfth day of of April, 1889, defendants Anthony Murray and Roxa Murray (or Roxanna Murray) his wife, executed, under their hands and seals, and delivered to plaintiff, a deed of general warranty, conveying a certain tract of land in Clay county, Missouri, to wit: All of that part of the north end of the west half of the northeast fourth of section number thirty-two, in township number fifty-one, in

range number thirty-two, included in the following
boundary, viz.:    Beginning twenty-eight poles due
south of the northwest corner of said northeast fourth
of (said) section, thence east thirty-two and twenty-
eight one hundredths poles, thence south six poles to
the center of a creek, thence up said creek in the center
thereof south seventy-one and one half degrees west,
seven poles, to a hickory tree twelve inches in diame-
ter (in quarter section line), thence on said quarter
section line twelve and sixty-five one hundredths poles
to the the point of beginning, containing two and one-
fourth acres more or less; that said deed was for a val-
uable consideration, to wit, one hundred dollars, which
consideration, plaintiff then and there paid to defend-
ants, Anthony Murray and Roxa Murray.

"Plaintiff states that it is a corporation organized
under and by virtue of article X of chapter 42 of the
Revised Statutes of Missouri for 1889, and the princi-
pal object of its organization was and is to raise money
by subscription, gift, bequest, initiation fees and dues
which shall constitute a fund out of which to provide
for the funeral expenses and decent burial of the mem-
bers of the society and their families.    That it has
erected and owns a wooden building on the tract of
land above described, which is used as a meeting place
for the corporation, its members and officers, and is
sometimes rented to the school district in which it is sit-
uated for school purposes.    That said land and building
are in the possession and are now the sole and exclusive
property of plaintiff, and no other person or body of
persons has or have any right to use or enjoy the same
except by the consent or permission of plaintiff.

"Plaintiff further states that at the time the deed
made by said Anthony Murray and wife was executed
and delivered, plaintiff was not a corporate body organ-
ized according to the forms of law, although such

organization was intended to be consummated, and on December 7th, 1891, such organization was affected according to law and on February 10th, 1892, a certificate to that effect was issued by the Secretary of State of the State of Missouri, and although plaintiff did not complete its organization until the date above named it was composed of the same persons, had the same name and the same objects in view at the date of the deed from the said Anthony Murray and wife, as it had at the time of the completion of its corporate organization.

"Plaintiff states that the defendant 'United Sons and Daughters of Peace No. 1,' is a corporation organized under the laws of Missouri.

"Plaintiff further states that owing to the fact that the said deed was dated and executed and delivered prior to the date of the incorporation of plaintiff, a proper title, such as was intended to be conveyed by defendants Murray and plaintiff, to the above described premises, does not pass to plaintiff, and that in order to make said deed pass a good title to plaintiff it should be dated of some date subsequent to the date of the completion of plaintiff's corporate organization, as aforesaid.

"Plaintiff states that said conveyance was so as aforesaid incorrectly made on account of the mistake of plaintiff's incorporators and defendants, as to the requirements of the corporation laws of the State of Missouri, and said deed did not consequently convey the title to said premises to plaintiff according to the mutual intent of the contracting parties, and that plaintiff has requested and demanded of defendants, Anthony and Roxa Murray, that they execute and deliver to it, a correct and proper deed of said premises, but defendants have ever refused and neglected to comply with said request and demand.

"Plaintiff further states that defendant, 'The United Sons and Daughters of Peace No. 1,' is an organization composed of women and men who live in the vicinity of the foregoing described property, and said organization, and defendants William Murray, Rachel Murray, his wife, Anthony Murray and Roxa Murray, his wife, Edward Hickman and other persons associated with them, whose names plaintiff can not now recall, are attempting to deprive plaintiff of the entire and exclusive possession and occupation of said premises, although they have been forbidden by plaintiff to come upon said premises or in any manner use or occupy the same without its permission, but nevertheless, said defendants have attempted by force to enter plaintiff's premises and threaten to do so whenever they so desire to do.

"Plaintiff states that it has no adequate remedy at law.

"Wherefore plaintiff prays for a decree of this court directing and compelling defendants Anthony Murray and Roxa Murray, his wife, to execute and deliver a new and reformed deed which shall be dated as of a date subsequent to February 10, 1892, and that defendants, 'The United Sons and Daughters of Peace No. 1,' William Murray and Rachel Murray, his wife, Anthony Murray and Roxa Murray, his wife, Edward Hickman and all persons associated with them in said attempts, be forever restrained and enjoined from using, occupying or possessing said premises in opposition to plaintiff's rights, and in interfering or attempting to interfere or obstruct in any manner the peaceable and exclusive possession, occupation and enjoyment of said premises by plaintiff and its assigns, and for such other and further relief in the premises as may be just and right."

To the petition, appellants filed their demurrer

November 4, 1895, basing the same on the following causes of demurrer, to wit:

"1. Because the said petition does not state facts sufficient to constitute a cause of action against defendants.

"2. Because the allegations of said petition are inconsistent and contradictory."

The demurrer was heard and overruled by the circuit court during its February term, 1896, namely, on March 5, 1896, and the appellants abiding by their demurrer and refusing to answer over, on March 5, 1896, the court rendered its decree directing defendants Anthony Murray and Roxa Murray, his wife, to make, execute and deliver to plaintiff a good and sufficient deed to the lands described in the petition and in default it was decreed that the said conveyance be deemed as stated after the final incorporation of plaintiff and a decree forever enjoining defendants and each of them interfering with or molesting plaintiff in its peaceable exercise of ownership in and over said lands.

I.   Defendant invokes the well settled common law doctrine that at law there can be no such thing as a conveyance without a person, either natural, or artificial, capable of receiving a grant; a doctrine fully recognized by the adjudications of this court.   2 Blackstone's Com. (Chitty) 296; 3 Washburn on Real Property, [5 Ed.] 282; *Arthur v. Weston*, 22 Mo. 378; *Thomas v. Wyatt*, 25 Mo. 24–26; *Douthitt v. Stinson*, 63 Mo. 268.   But it has long been established in this State that "these decisions refer entirely to the transfer of the legal estate and do not touch the equitable rights of the parties growing out of the transaction."   *Arthur v. Weston*, 22 Mo. *loc cit.* 384; *Reinhard v. The Va. Lead Mining Co.*, 107 Mo. 616.

It has also been held in a number of well considered cases that where a grantor deals with the members

of a corporation by their corporate name, receives their money as of said corporation and undertakes to convey land to said company in its corporate name, said grantor will be forever afterward estopped from denying the validity of the corporation or its power to receive a grant. The principle of these cases commends them to our sense of right and justice. Having received the consideration the grantor is in no position to question the corporate capacity of the company whatever power the State may have. *Broadwell v. Merritt,* 87 Mo. 95; *Ragan v. McElroy,* 98 Mo. 349; *Reinhard v. Va. Lead Mining Co.,* 107 Mo. 616; *Smith v. Sheeley,* 12 Wall (U. S.) 358.

At the time this company was organized with the view to its incorporation which was subsequently effected, the laws of this State authorized an incorporation for the purposes named in its articles. In that respect this case differs radically from *Douthitt v. Stinson,* 63 Mo. 268. In that case there was neither an act of the legislature nor a general statute, permitting the incorporation of the "Town of Lancaster and the Lancaster seminary." Moreover that was a simple action of ejectment in which the legal title alone was involved.

Learned counsel, however, insists that the petition in this case shows that the deed was made prior to any organization whose object was to incorporate. We think this is a hypercritical view of the petition. We think that perhaps the petition might have been made a little more specific but read as a whole it charges that the defendants made the deed to this organization by its corporate name; that it was then composed of the same persons who were taking steps for incorporation and who afterward formed the legal body and that they paid defendant their money for the deed and received it for that purpose.

The circuit court correctly ruled that in equity and

good conscience defendants could not repudiate their deed while enjoying the purchase money; that having recognized plaintiff as a corporation for the purpose of obtaining the money of its members they were estopped after its receipt and retention to question its corporate character and properly issued a perpetual injunction against all interference and intermeddling with plaintiff's rights to the land. The decree is affirmed. SHERWOOD and BURGESS, JJ., concur.