**Walter R. WIENKE, Appellant (Plaintiff Below),**

v.

**Danny L. LYNCH, Glenda S. Lynch, Husband and Wife, and the Kissell Company, an Ohio Corporation, Appellees (Defendants Below).**

**No. 2–1078A348.**

Court of Appeals of Indiana, Second District.

July 16, 1980.

David P. Murphy, Wolf, Robak & Murphy, Greenfield, for appellant.

James P. Seidensticker, Jr. and David R. Day, Bose & Evans, Indianapolis, for appellees.

SHIELDS, Judge.

Appellant Walter Wienke (Wienke) initiated a quiet title action against Appellees, Danny and Glenda Lynch (Lynches) and The Kissell Company (Kissell).[1] Motions for summary judgment were filed by all parties.[2] The trial court ruled in favor of Lynches upholding their defenses of laches, acquiescence, and res judicata, and entered final judgment quieting title in the Lynches. We affirm.

On appeal Wienke raises the following issues:

(1) Whether a husband's laches and acquiescence can bar his assertion of legal interest in tenancy by entireties property;

---

1. As Lynches' mortgagee, Kissell's interest is dependent upon Lynches' establishment of title in the mortgaged real estate. For this reason, no separate treatment will be afforded Kissell in this opinion, and reference to the Lynches shall generally encompass the rights and interests of Kissell.

2. Wienke filed motion for partial summary judgment, denial of which is appealable subsequent to entry of final judgment. Ind. Rules of Procedure, Trial Rule 56.

(2) Whether the uncontradicted facts legally constitute the elements of delay and prejudice within the meaning of laches;

(3) Whether failure to take notice of, and act in accordance with the deed records is inequitable conduct; and

(4) Whether a property settlement is *res judicata* as to the legal interests in tenancy by entireties property.

The facts are undisputed. Walter and Elsie Wienke were married on September 4, 1960. On September 9, 1960, Wienke conveyed property owned by him, 4002 Ridgeview Drive, to himself and Elsie as tenants by the entireties, and Elsie conveyed property owned by her, 2902 Harlan Street (Harlan), to herself and Wienke as tenants by the entireties. The conveyances were made through a straw man and were recorded.

July 17, 1972 Elsie conveyed Harlan to Colonial Discount Corporation (Colonial) by warranty deed and for valuable consideration. Despite Wienke's objections to the sale, he appeared for the closing with Elsie. Colonial informed Wienke his presence was not needed and he waited outside during the closing. Wienke did not sign the deed.

Colonial recorded the deed and made valuable and lasting improvements to Harlan. Wienke was aware of the improvements.

May 24, 1973 Colonial conveyed Harlan by warranty deed and for valuable consideration to the Lynches, who recorded the deed. Kissell took and recorded a mortgage in the property.

From July 1972 until the present either Colonial or the Lynches have paid the property taxes on Harlan. Wienke paid no taxes on Harlan during this period.

May 30, 1975 Wienke instigated dissolution proceedings against Elsie. During the course of the proceedings, Wienke was advised by his attorney that he had a legal interest in Harlan. However, the property agreement executed by Wienke and Elsie, and incorporated into the dissolution decree is silent as to Harlan.

Wienke initiated this quiet title suit on May 12, 1977.

■ When reviewing a summary judgment, this Court will reverse if the record discloses either an unresolved issue of material fact or an incorrect application of law. *Stout v. Tippecanoe County Dept. of Public Welfare,* (1979) Ind.App., 395 N.E.2d 444. The facts are not in dispute in this case and Walter does not place into issue any disagreement as to inferences to be drawn from these facts. Therefore, this Court only addresses the appropriateness of the trial court's legal conclusions. *Central Realty, Inc. v. Hillman's Equipment, Inc.,* (1969) 253 Ind. 48, 246 N.E.2d 383.

I

Wienke contends that a conveyance by one tenant of the entireties is void, and that the grantees of a void conveyance cannot assert the defenses of laches and acquiescence against the legal interest of the nonconveying tenant.

■ We agree with Wienke's contention that the entireties relationship cannot be severed by the unilateral action of one tenant. Husband and wife have no separable interest in entireties property, therefore, a conveyance by one tenant is ineffective to pass legal title.[3] *Pension Fund of Disciples of Christ v. Gulley,* (1948) 226 Ind. 415, 81 N.E.2d 676; *Chandler v. Cheney,* (1871) 37 Ind. 391; *Sharp v. Baker,* (1911) 51 Ind.App. 547, 96 N.E. 627. A finding that the conveyance is ineffective, however, does not lead to the conclusion that the

---

**3.** Despite case law reference to unilateral conveyances of entireties property as "void," the more accurate term is "inoperable." While a void deed passes no legal title, an inoperable deed passes title upon compliance with a necessity condition. A conveyance of entireties property executed by the wife alone would be inoperable, passing no title to wife's grantee.

Should the husband later join in the conveyance or deed his interest to his wife, however, the deed would become operable, effectively dating back to the unilateral conveyance. *Pension Fund of Disciples of Christ v. Gulley,* (1948) 226 Ind. 415, 81 N.E.2d 676; *Thalls et al. v. Smith,* (1894) 139 Ind. 496, 39 N.E. 154.

underlying legal interest is immune from equitable defenses of laches and acquiescence. The doctrines of laches and acquiescence are directed at the actions, not the legal interests, of the party against whom they are raised.

■ Despite the legal interest, inequitable dilatory conduct can bar its assertion. We agree with the trial court's determination that Wienke's legal interest in an ineffective conveyance of tenancy by entireties property is subject to the equitable defenses of laches and acquiescence.

There is support for this position in Indiana case law. In *Hutter v. Weiss*, (1961) 132 Ind.App. 244, 177 N.E.2d 339, the court held that, while no legal or equitable title had passed to the purchasers at a procedurally defective estate sale, such title could pass to them through estoppel or by reason of the plaintiff's laches.

The case of *Harwood v. Masquelette*, (1932) 95 Ind.App. 338, 341, 342, 181 N.E. 380, 381, dealt with the effectiveness of a corporate conveyance of real estate prior to state approval of the corporation's articles of incorporation. The court distinguished legal and equitable interests as to an ineffective conveyance of property.

"This contention is in accord with the almost universally accepted rule that a deed to an immediate estate in land, made to a person not in being or a corporation not yet organized or having a valid existence, is a nullity and passes no title to anyone   .   .   .   but these decisions refer to the transfer of the legal title, and it is our opinion that they do not affect the equitable rights of the parties growing out of the transaction. *White Oak Grove Benevolent Society v. Murray*, (1926) 145 Mo. 622, 47 S.W. 501."

## II

Wienke next disputes the legal calculation of the period of delay. He contends that the relevant period of delay was the ten (10) months between the date Colonial purchased from Elsie (July 1972) and the date Lynches purchased from Colonial (May 1973). This is the period, according to Wienke, in which Lynches could have been misled by his inaction and, therefore, is the only period of time relevant to the issue of delay. It is his position that a ten (10) month period does not constitute delay within the meaning of laches.

■ The argument is flawed. Laches, unlike equitable estoppel, does not contain the element of reliance.[4] It focuses on the time from when Wienke learned of his legal claim until he finally asserted it, not the period of time in which the Lynches were induced or misled by his conduct.

■ Wienke's legal claim matured on July 17, 1972[5] when he arrived for, although he did not participate in, the sale of property that he knowingly owned with his wife as tenants by the entireties. He finally raised his claim on May 12, 1977, nearly five years later.

As stated in the case of *Haas v. Holder*, (1941) 218 Ind. 263, 274, 32 N.E.2d 590, 594:

"There is no absolute rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent in the strict sense for another. Each case is to be determined according to its own particular circumstances. In other words, the question of laches is addressed to the sound discretion of the

---

4. Laches and estoppel are distinct and separable defenses. *Ryason v. Dunten*, (1905) 164 Ind. 85, 73 N.E. 74. Despite case law reference to the proposition that laches must constitute equitable estoppel in order to "cut off" legal interests within the statutory period of limitation, *Brake v. Payne*, (1894) 137 Ind. 479, 37 N.E. 140; *Scherrer v. Ingerman, Administrator*, (1887) 110 Ind. 428, 11 N.E. 8; *Piel v. DeWitt*, (1976) Ind.App., 351 N.E.2d 48; recent cases have not attached such rigorous requirement to the laches defense. *Phar-Crest Land Corpora-*

*tion v. Therber*, (1969) 251 Ind. 674, 244 N.E.2d 644; *Hutter v. Weiss*, (1961) 132 Ind.App. 244, 177 N.E.2d 339.

5. On appeal Wienke does not sufficiently raise and brief, within the meaning of Ind.Rules of Procedure, App.Rule 8(A)(7), a factual dispute as to the issue of his knowledge of a legal claim against Elsie's grantees. He merely alleges an incorrect legal determination of the period of delay.

chancellor, and his decision will not be disturbed on appeal unless it is so clearly wrong as to amount to an abuse of discretion. 21 C.J. p. 217; *Ryason v. Dunten,* (1905) 164 Ind. 85, 96; 73 N.E. 74, 77." We cannot say as a matter of law that a five year delay does not constitute laches. It is the inequity of the delay resulting in prejudice, more so than the extent of the delay, that is pertinent. We defer to the trial court's apparent satisfaction of the element of delay.

■ Wienke also disputes a finding of prejudice, contending that the Lynches were not prejudiced by his delayed assertion of title and, further, that the provisions of the Occupying Claimant's Act[6] prevent Lynches' prejudice. We disagree.

There is adequate case law that payment of taxes on the property and bearing the burdens and risks of property ownership are sufficient prejudice. *Phar-Crest Land Corporation v. Therber,* (1969) 251 Ind. 674, 244 N.E.2d 644. As stated in *Grantham Realty Corporation v. Bowers,* (1939) 215 Ind. 672, 685, 686, 22 N.E.2d 832, 839:

> "One having a technical claim on property and who is in possession of all the facts concerning such claim cannot sit idly by and permit another, who believes himself to be the owner of such property, to carry the burden of the property while the owner of the claim by the passage of time makes sure that the property is worth carrying. An owner of a claim so doing is guilty of laches and a court of equity will not then permit him to assert such claim to the injury of the other party. *Kroeger v. Kastner,* (1937) 212 Ind. 649, 10 N.E. 902."

It is without question that the Lynches, and their predecessors in interest, Colonial, have paid the expenses incident to property ownership since 1972, and that Colonial made valuable and lasting improvements on the property. As stated earlier, the question of laches is "addressed to the sound discretion of the trial court reviewable upon appeal only for abuse of that discretion." *Citizens National Bank of Grant County v. Harvey,* (1976) 167 Ind.App. 582, 594, 339 N.E.2d 604, 611. We find no such abuse.

■ Wienke's allegation that the provisions of the Occupying Claimants Act prevent Lynches' prejudice is without merit. It is well established that the statute is not the exclusive remedy for persons paying taxes and making improvements under color of title. *Phar-Crest Land Corporation, supra,* 251 Ind. at 682, 244 N.E.2d at 648.

> "We find no law that compels the appellees to follow such a statutory remedy for reimbursement for improvements made. The appellees had the right to elect whether to stand upon the equitable principle of estoppel and laches and retain possession and title, or to accept the benefits of Burns' § 3–1501. This statute offers reimbursement where improvements have been made in situations that go beyond equitable estoppel and laches or where the facts do not support such a position, as the statute says, when improvements have been made 'in good faith.' "

### III

The third issue is whether Lynches' constructive notice of Wienke's interest in the property, via the deed records, should bar their use of the equitable defenses of laches and acquiescence. Wienke contends Lynches' failure to review the deed records, and act in accordance therewith, is such reckless conduct to render the aid of equity unavailable to them. Reliance is placed on *Mettart v. Allen,* (1894) 139 Ind. 644, 39 N.E. 239, for the proposition that one who fails to

---

6. IC 34–1–49–1 (Burns Code Ed.) reads as follows:

> "When an occupant of land has color of title thereto, and in good faith has made valuable improvements thereon, and if afterwards, in the proper action, found not to be the rightful owner thereof, no execution shall issue to put the plaintiff in possession of the property after filing the complaint thereinafter mentioned, until the provisions of this Act [34–1–1–1—34–1–68–1] are complied with."

This statutory provision does not vary from Ind.Ann. Burns § 3–1501 relied on in *Phar-Crest Land Corporation v. Therber,* (1969) 251 Ind. 674, 244 N.E.2d 644.

search the records "cannot invoke the aid of the court of equity to relieve himself from the consequences of his own want of ordinary care."

Close reading of *Mettart v. Allen, supra,* relied on by Wienke, reveals that the plaintiff, who sought the aid of equity to quiet his title in real estate against mortgagees of record, not only had constructive knowledge by virtue of the mortgage records, but had actual knowledge of the pertinent transactions. Therefore, the comment in *Mettart, supra,* 139 Ind. at 651, 39 N.E. at 241, that the plaintiff's actions were so "want of ordinary care" as to bar his equitable relief is not determinative that failure to search the records bars access to equitable relief. Further, we note *Mettart, supra,* is distinguishable from the case at bar since it does not involve a laches or acquiescence defense.

▄▄▄▄ The law recognizes two kinds of notice, constructive and actual. Constructive notice is a legal inference from established facts. Deeds and mortgages, when properly acknowledged and placed on record as required by statute, are constructive notice of their existence, " 'and charge a subsequent grantee with notice of all that is shown by the record.' " (Citation omitted.) *Willard v. Bringolf,* (1936) 103 Ind.App. 16, 29, 5 N.E.2d 315, 321. Notice is actual when it has been directly and personally given to the person to be notified. Actual notice is generally extended to embrace " 'all degrees and grades of evidence from the most directive and positive proof to the slightest circumstances from which a court or jury would be justified in inferring notice.' " (Citation omitted.) *Willard, supra,* 103 Ind.App. at 29, 5 N.E.2d at 321.

It is uncontested that the chain of title to the Harlan property reflects the absence of Wienke's signature in the conveyance to Colonial, and therefore Lynches had constructive knowledge of Wienke's interest. Wienke does not, however, offer any evidence that the Lynches had actual knowledge of his interest.

In *Hutter v. Weiss, supra,* 132 Ind.App. at 248, 177 N.E.2d at 342, the court allowed the grantees of a purchaser of real estate at a procedurally defective estate sale to raise the plaintiffs' laches in defense to plaintiffs' suit for quiet title. The court noted the purchaser had no actual notice of plaintiffs' interest in the real estate. The court in *Ryason v. Dunten,* (1905) 164 Ind. 85, 98, 73 N.E. 74, 78, a quiet title action, did not find the defendant's constructive notice fatal and noted the absence of actual knowledge:

"It is contended by counsel for appellant that the findings do not exclude the idea that the appellee Sarah J. Dunten had constructive notice of appellant's claim. We need not pause precisely to consider the legal effect of the findings. No question is made but what there are valid findings that said appellee was a purchaser without actual knowledge, who bought in good faith, and paid value. At the least, she was not a speculator, and she gave for the property all that it was worth. As some of the authorities from which we have quoted show, the chancellor may be called upon to balance the claims of the parties to determine who has the greater equity. As against the hardship which an adverse decree would impose upon appellee there must be contrasted the light in which the findings place appellant."

In *Grantham Realty Corporation v. Bowers, supra,* another quiet title action, the plaintiff successfully asserted defendant's laches as a bar to defendant's legal interest in the real estate. The court noted the plaintiff believed he had legal ownership. *Id.,* 215 Ind. at 686, 22 N.E.2d at 839.

▄▄▄▄ Thus, the law does not indicate that constructive knowledge, standing alone, is sufficient to bar the equitable defense of laches. One who fails to search the records acts at his own peril, jeopardizing his interest against prior interest holders of record, but it does not follow that such failure to search the records is tantamount to inequitable conduct.

Even assuming the Lynches had actual knowledge, *McClintock on Equity,* H. McClintock (1948 2nd ed.) at p. 73 suggests

that such knowledge might not defeat their laches defense.

"While defendant's ignorance of notice of plaintiff's claim may have a bearing on the question of what is reasonable delay, actual notice of the claim does not preclude the defense of laches. Equity does not require that defendant remain passive until such time as plaintiff chooses to sue or assume the risk of serious loss if he undertakes to act."

f.n. 27 "But in all of the cases where lack in diligence in prosecuting an action was held laches, as well as in a large proportion of the other cases where the defense was sustained, it is evident that defendant had notice of plaintiff's claim but that fact did not relieve plaintiff of the obligation to use diligence in suing."

*Phar-Crest Land Corporation v. Therber, supra,* a quiet title case, is in line with *McClintock on Equity, supra.* In *Phar-Crest* the defendant had purchased property from a railroad who held it under a grant of right-of-way. Shortly after the purchase, defendant advised the apparent reversionary interest holder (grantor of the current plaintiff) of the purchase. Neither the reversionary interest holder nor his grantees acknowledged any interest in the property, and defendant proceeded to use the land and made improvements thereon. The court, in affirming defendant's laches defense, did not expressly address defendant's actual knowledge of plaintiff's interest and its effect upon his right to raise a laches defense but, from the facts, we may assume the defendant had actual knowledge.

 We reiterate the appellate standard of review in equity: abuse of discretion. In light of recent case law focusing on the dilatory conduct of the legal interest holder and only tangentially recognizing the knowledge of the party raising the laches as significant and not finding such knowledge to be fatal, we find the trial court did not abuse its discretion in ruling in favor of Lynches' laches defense despite their constructive knowledge.

## IV

This Court need not reach the question of *res judicata,* in light of its affirmance of the trial court's finding of laches and acquiescence. Even were we to accept Wienke's argument that the divorce proceeding was not *res judicata* as to his interest in the property, Wienke's interest would still be barred by his laches.

The trial court's ruling is affirmed.

BUCHANAN, C. J., and SULLIVAN, J., concur.