Douthitt, et al., v. Stinson.

J. G. DOUTHITT, *et al.*, Plaintiffs in Error, *vs.* EDMUND STINSON, Defendant in Error.

1. *Limitations—Adverse possession—Absence from the State in the Confederate States during the war to be deducted.*—The period of absence of the party having the legal title to land, in the Confederate States during the war, between April 19th, 1861, and the close of the war in 1866, is to be deducted in estimating the length of adverse possession of one setting up the statute of limitations against the owner.

2. *Evidence—Judicial notice—Missouri—Confederate States.*—The courts of this State will take judicial notice of the fact that Missouri was not one of the States that joined with the Confederate States.

3. *Limitations—Adverse possession—Assertion of title.*—An owner of real estate may suffer it to remain unoccupied for any number of years, yet his title draws the possession with it until an adverse possession commences; and, until the adverse possession commences, he is not bound to assert his title or make his entry.

4. *Corporations—Creation of, in 1839.*—In this State, in 1839, when there was no General Statute of the subject of corporations, a private corporation could not be called into existence, except by special act of the legislature.

5. *Conveyances—Parties—Corporations—Deeds to corporations not duly created, void.*—It is essential to a valid conveyance that there should be a grantee capable of taking; and a deed which professes to convey to a corporation by name which has no valid existence, is a nullity, and passes no title to any one.

*Error to Moniteau County Circuit Court.*

*Moore & Williams,* and *Ewing & Smith* and *Pope,* for Plaintiffs in Error.

I. The title to the land in dispute was passed by patent to Dr. Douthitt. The legal title being thus vested in him, the question is, whether it has passed out of him by grant or by operation of law in consequence of adverse occupancy.

II. To constitute a valid grant, three things are necessary: a natural or artificial person capable of granting or passing the title, a thing that is the subject of a grant, and a natural or artificial person capable in law of receiving or taking by the granting. The " town of Lancaster and Lancaster Seminary " never had any corporate existence. The grantees in the deed are designated therein as directors, etc. They were directors of an unincorporated town and seminary of learning. No person is named

as director of this association, but the deed is to the "directors" without naming the persons who constituted such directory. These directors were the officers of a fictitious, artificial person, the directors of a legal myth and artificial nonentity.

"A deed to the directors or trustees of an unincorporated association is void because they have no legal capacity to take or hold real property." (German Association vs. Scholler, 10 Minn. 331; Jackson vs. Cary, 8 John. 385; Thomas vs. Marshfield, 10 Pick. 364; Swaine vs. McCohany, 4 Ohio, 157; 3 Washb. Real. Prop. 238.)

III. If it is contended that these "directors" are trustees of a trust estate created by the deed of Douthitt to them, for the benefit and use of the numerous persons who subscribed to the "Seminary enterprise," then the deed must be held bad, for the persons who were to take the trust cannot be ascertained. (Sto. Eq. Jur. § 979; Wheeler vs. Smith, 9 How. [U. S.] 55.) There was then no grantee named in the deed capable in law of taking and holding the title to said real estate, and, consequently, there was no grant, and the said deed did not operate as a conveyance of the legal title to said land out of Dr. Douthitt. It remained in him notwithstanding the deed, and, of course, descended to his heirs, the plaintiffs, unless it has passed by operation of the law of limitations.

IV. Plaintiff's ancestor was at the outbreak of the rebellion, and during the continuance thereof, a resident of the States of Arkansas and Texas—States embraced within the hostile territory—and its inhabitants were subjected by reason of the state of war, to the disabilities imposed thereby, and could not assert any right in the courts of Missouri, and being under such disabilities, the statute of limitations would not run against him during the continuance of his war disability. This time must be deducted from the time of the defendant's occupancy, which thus falls far short of the time necessary to acquire the title. (11 Wal. 244, 493, 503; 1 Dillon, 372; 10 Wal. 218; 57 Ill. 275.)

V. The defendant can invoke the statute of limitations only from the time he took open and notorious possession under color of title, which, according to his own evidence, was not until the

spring of 1863. This color of title is dated May 5th, 1862, less than ten years before the commencement of this suit. The possession of the board of directors, etc., had ceased more than twenty years before, and there had been no continuous possession and no privity with said association. Hence, his defense utterly failed. (Fugate vs. Pierce, 49 Mo. 441 ; Harrison vs. Cachelin, 23 Mo. 117.)

*Owens & Wood*, for Defendants in Error.

I. It is not necessary that an act of the legislature or charter shall be offered in evidence in order to establish the existence of a private corporation. Angel & Ames (Priv. Corp. § 70, 8th Ed.) correctly state the rule : " It may be considered well settled that a corporation may exist in this country by presumptive evidence.   *   *   *   *

It may indeed be safely relied on as a sound proposition, that when an association of persons have for a long time acted as a private corporation, and have been uniformly recognized as such, and rights have been acquired under them as a corporation, the law will countenance everything in favor of its legal corporate existence at least, except against the Sovereign."

Under this rule the evidence in this case clearly proves the grantees in the deed a corporation.

The non-user of corporate power now, will not affect the acts done while it was in operation, or the legal presumption arising from those acts. (Kayser vs. Bremer, 16 Mo. 88.)

II. The plaintiffs are estopped from denying the capacity of their ancestor's grantee to receive the title, especially since he has received the purchase money and acted as a director of the company. (St. Louis vs. Shields, 62 Mo. 247 ; Smith vs. Heidecker & Gant, 39 Mo. 157 ; Dickson vs. Anderson, 9 Mo. 156 ; Smith vs. Sheely, 12 Wal. 358 ; Meyers vs. Craft, 13 Wal. 291 ; Bowers vs. Appleby, 1 Sand. [N. Y.] 158 ; Palmer vs. Lawrence, 3 Sand. [N. Y.] 161.) Attention is especially directed to the authorities cited in notes of H. B. Johnson to case of Land vs. Hoffman, reported in Am. Law Reg. vol. 12, p. 143.

III. The court declared the law on the statute of limitations more favorably to plaintiffs than they had a right to expect. The question of the suspension of the statute during the war is a mere abstraction. So far as this case is concerned the statute of twenty-four years is complete after deducting the whole time of the war.

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment commenced April 16, 1872, by the heirs of W. W. Douthitt, deceased, to recover the west half of the southwest quarter of section 33, township 45, range 16.

The plea denies the general allegation in the petition, and then sets up the following facts in defense :

In 1839 certain persons associated themselves to buy the real estate described in the petition, with a view to lay the same off into town lots, and selling them and erecting a seminary of learning on them, and subscribed and paid a sum of money sufficient to pay for forty acres of said land described in the plaintiff's petition, and placed said money in the hands of W. W. Douthitt and one T. G. Lancaster, as trustees. The answer further alleges that Lancaster and Douthitt did purchase the whole tract sued for, and took a title in the name of Douthitt, as trustee; that the association paid Douthitt the amount he paid as purchase money, and received from him a deed in which the grantees were described as "the board of directors of the town of Lancaster and Lancaster Seminary and their successors in office."

The defendant avers that this association was known and transacted all their business under the name and style of The Town of Lancaster and the Lancaster Seminary; that prior to the 28th of Sept., 1839, said association of persons appointed and constituted certain of their members, to-wit: Wade Howard, Phillip Barger, T. G. Lancaster, G. J. Robertson, Archibald Woods, Benjamin Gilbert, Samuel Calhoun and W. W. Douthitt, as a board of directors to hold the title to said land, manage and sell the same, and generally to manage and control the business of said association, and said persons so constituting said board became known as and were styled the board of directors of the

town of Lancaster and the Lancaster Seminary ; that afterwards, and on the 28th day of September, 1839, said W. W. Douthitt, in the execution of his said trust, and in consideration of one hundred dollars to him paid by said association, did, by his deed, convey all the real estate described in plaintiff's petition to the said board of directors.

It is further stated that the board immediately took possession of said land and built a school house thereon, and laid off a part of the tract as a town, and sold town lots thereon, and gave possession to the purchasers, all of which was done with the knowledge and consent of said W. W. Douthitt, who was one of the board ; and said board held open, notorious, continuous adverse possession of said land from said day in 1839 until the —— day of March, 1852, against all the world ; that at this last period the association having become involved in debt, and said real estate having been sold for taxes, the surviving members of said board bargained and sold said real estate to the defendant at the price of $280, which sum was fully paid by defendant, and said surviving members of said board placed defendant in possession of said land, and defendant has made valuable and lasting improvements thereon ; that said Douthitt was informed of this sale, made no objections to it, and permitted defendant to occupy and improve the land without objection, wherefore said W. W. Douthitt and his heirs are estopped from asserting any claim adverse to the title of defendant. The bar of the statute of limitations is then set up, both of ten years and of twenty-four years.

The replication is a specific denial of each allegation in the answer. In reply to the defense of the statute of limitations, the plaintiffs assert that their ancestor, W. W. Douthitt, removed from Missouri to Arkansas in 1856, and continued to reside in said State or in Texas up to the war in 1861, and to the date of the peace proclamation on the 13th of June, 1865, and therefore that the statute of limitations did run during said civil war, or until 13th of June, 1865.

On the trial the facts turned out to be substantially as stated in the answer and in the replication to the answer, in regard to the statute of limitations. W. W. Douthitt entered the eighty

acres in his own name, and of course the patent was issued to him. He advanced part of the money, but on the return of himself and Mr. Lancaster, his associate, from the land office, and receiving the money advanced by him, he executed a deed of bargain and sale, in which the words "grant bargain and sell" are used, and in which there is a general warranty. This deed was to the board of directors for the town of Lancaster and the Lancaster Seminary, and their successors in office. The deed is signed by Douthitt and his wife, acknowledged by both, and duly recorded in 1839.

For several years subsequent to 1839 the directors of this association proceeded with their scheme, laid out a town, built up a seminary, put Mr. Lancaster at its head, sold out some of the town lots, as deeds produced on the trial show, in which Ward Howard and Lancaster, as commissioners, signed the deeds; but after six or seven years, dissensions or divisions among the board occurred; debts had been contracted in building the seminary; the company became insolvent; the school was closed, and the village abandoned.

In 1856 Wade Howard, who was probably the principal creditor, and who had been one of the leading projectors, sold out the school building as personal property. In 1848, or thereabouts, W. W. Douthitt left for Arkansas, and never returned until after the close of the civil war, and then only on a visit. In 1862 W. G. Howard, a son of Wade Howard, as agent for his father, having previously procured a tax title to the land, conveyed the land to the defendant by a quit-claim deed for $280, and the defendant took possession in February, 1862, or thereabouts, and has been in possession ever since. This tax title was based on an assumption that Douthitt was the owner, the assessment having been in his name as owner.

There was also proof that W. W. Douthitt returned to this neighborhood in 1865, but set up no claim to any title in himself. He died in 1871, and the heirship of plaintiffs is established.

The instructions offered in the case on both sides were numerous. It is deemed unnecessary to recite them, since it is obvious that only two points were raised, and they all related to one or other of these points. The defences all resolved themselves into an adverse possession, based on the statute of limitations, or an outstanding title in the "Board of Directors of the Town of Lancaster and the Lancaster Seminary," grantees in the deed of Douthitt of 1839, made shortly after he entered the land, and before the patent issued. And if either of these defenses is available, the decision of the circuit judge who tried the case, which was for the defendant, must be affirmed.

In regard to the defense based on the statute of limitations, it is apparent from the facts which have been stated, that there was no foundation in the evidence to justify the instructions given for the defendant, or at least to justify the finding, if it was based on that point. The defendant, according to his own statement on the trial, which was uncontradicted, took possession of the land in controversy in January or February, 1862.

The suit in ejectment was not commenced till March, 1872, but the plaintiff's ancestor was in Arkansas or Texas as early as 1845, and remained there till the beginning of the war. If we deduct the four years of the war from the ten years which elapsed between the beginning of the defendant's possession and the beginning of the suit, it follows that the bar of ten years pleaded was not a bar to the action. For, between the 19th of April, 1861, when the president's proclamation was issued, and the close of the war, in 1865, the plaintiff's ancestor was effectually precluded from asserting his rights in the forum where the defendant resided, and therefore, under the decision of the Supreme Court of the United States, in Hanger vs. Abbott (6 Wall. 532), the period during which the war continued must be subtracted from the ten years and a month which otherwise might have been a bar. The circuit court gave the instruction on this point asked by the plaintiffs, but amended it by adding that this was the law: "If the court should be of opinion that Arkansas and Texas were Confederate States, and that Missouri was a loyal State." Why such addition or qualification was made is not understood, since

the courts of this State will take judicial notice of the fact that Missouri was not one of the States that joined with the Confederate States. (McKenzie, Adm'x vs. Hill, Adm'r, 51 Mo. 307.)

We do not understand upon what principle the court applied the twenty-four years bar to the case. For fifteen years prior to defendant's occupation, the land in controversy was not occupied by any one. If the absence of the plaintiff's ancestor in Texas is held to be a disability within the meaning of the 4th section of art 1. of our limitation act or its proviso, still, until there was an adverse possession, the owner of the land was not bound to assert his title or make his entry. An owner of real estate may suffer it to remain unoccupied for any number of years, yet his title draws the possession with it until an adverse possession commences, and so the twenty-four years bar in this case did not commence until 1862, and really continued less than ten years.

The principal question in this case is, whether the deed of Douthitt to the "Board of Directors of the Town of Lancaster and the Lancaster Seminary, and their successors in office," was operative. It was not pretended, that at the date of this deed, or subsequently or prior thereto, there was ever any such corporation as the Town of Lancaster and the Lancaster Seminary established by any act of the legislature, or by any proceeding in accordance with any law, general or special. The association, it is conceded, was a voluntary one, and had no charter from the State.

It is said in Angel and Ames on Corporations (ch. 1, § 70), that "it may be considered well settled that a corporation may exist in this country by presumptive evidence. In Massachusetts, where no act of incorporation could be found for a parish which had existed more than forty years, evidence was admitted to prove its incorporation by reputation. And in another case in the same State, parol proof, tending to show the existence of an act incorporating a town, with the ordinary powers and privileges, was deemed admissible at the expiration of thirty years; though, in general, a record is to be proved by inspection, or a properly authenticated copy. It may, indeed, be safely relied on as a sound proposition, that when an association of persons have for a long

time acted as a private corporation, have been uniformly recognized as such, and rights have been acquired under them as a corporation, the law will countenance every presumption in favor of its legal corporate existence; at least unless against the sovereign."

These remarks of the authors of this reliable treatise have no application to the case now under consideration. The cases in Massachusetts which they refer to, merely show that certain sub-divisions of territory, which are in that State called towns, and certain other associations called parishes, after acting in such capacity for a long period, are not required in all cases to produce their charters, or in other words, the records of legislative authority under which they were created. What is said in regard to private associations is based on the decision of Baron Hullock in the case of the Mercers, &c., of Shrewbury vs. Hart. (1 Carr. & Payne, 113.) That was an action brought by the company of Mercers, and to prove that the company were and always had been a company, a series of books containing admissions of freemen and other acts of the company, *commencing in the reign of Henry the VI.* and down to the trial, *taken from a chest which* had always been in the custody of the clerk of the company, were admitted as presumptive evidence. There are probably in the original thirteen States, many ancient grants or charters in colonial days which could not be produced now, and the production of which would be dispensed with on the principle decided by Baron Hullock and secondary evidence be admitted.

But in this State, in 1839, when there was no general statute on the subject of incorporations as there is now, we do not very well see how a private corporation could be called into existence except by special act of the legislature.

It will be observed that it appears in evidence in this case that this association, said to have been known by the name of "The town of Lancaster and Lancaster Seminary," had been formed but a very short time, less than a year, perhaps than a month, before the deed of Douthitt was made. There is no pretense of its being an old corporation, or that its charter was lost, or indeed that the association ever had any charter.

There having been, then, at the date of Douthitt's deed, no corporation such as "The town of Lancaster and Lancaster Seminary," the question is, what was the effect and value of this deed?

It is essential to a deed that it should have a grantor and a grantee. A deed implies a contract, and to a sealed contract there must be competent parties, and whether the grantee named in this deed could take is a question very much of authority and precedent, which if uniform, we cannot safely disregard. The remarks of Judge Leonard in Arthur vs. Weston (22 Mo. 383), where a similiar question arose, may with propriety be repeated here: "It is a matter of great interest to the country that its land titles should be kept as free as possible from uncertainty. For this purpose the law has required them to be put in writing, and in order to give them publicity has also required that they be put upon a public registry. That these provisions may be effectual for the purposes for which they were intended, the rules of the common law, as to the designation of parties, must be maintained in their vigor."

We have therefore, in accordance with this suggestion, examined the authorities referred to on both sides and many others.

In Jackson vs. Corey (8 Johns. 385), the deed was to "the people of the county of Otsego," and the court held that they had no capacity to take by grant. They were not a corporate body known to the law; that it was a settled rule of the common law that a community not incorporated could not purchase and take in succession.

In Hanbeck vs. Westbrook (9 Johns. 73), it was held by this same court that the inhabitants of a town, not being incorporated, are incapable to take an estate, and therefore that a proviso in a deed which reserved to them certain privileges was void.

In Russell vs. Topping (5 McClean, 195), it was held by the district judge that a grant to an imaginary corporation was a nullity.

In Harriman vs. Southern (16 Ind. 190), the court merely follows the decision in Russell vs. Topping.

In German Land Association vs. Scholler (10 Min. 338), it was held that the German Land Association, being a mere voluntary association of persons unincorporated, had no legal capacity to take land, and a grant to such association *eo nomine* would pass no legal title. But in that case the grant was not directly to the association, but to I. H. & S. in trust for such association, and yet the court held the deed to I. H. & S. as trustees was void.

In Tower vs. Hale (46 Barb. 361), it was held that a deed to "L. R. &c., trustees of the Methodist Society, and to their heirs and assigns forever," conveyed an absolute title to L. R. &c., named as grantees; that the words trustees of the Methodist Society were *descriptio personae.*

In Austin vs. Shaw (10 Allen, 552), it was decided that where a man mortgaged his land to certain persons named in the mortgage deed, but described as officers of an unincorporated association, the legal title vested in the persons described and not in the company. To the same effect is Brown vs. Combs, &c. (5 Dutcher, 36.)

In Smith vs. Sheely (12 Wallace, 361), there was a corporation duly organized by the legislature of the Territory of Nebraska, but its charter not approved by congress, it was held that the corporation was one *de facto,* and could take a title.

Such was the decision also in Myers vs. Croft (13 Wallace, 295).

These authorities are deemed sufficient to show that the deed of Douthitt to "The board of directors," of an imaginary corporation was not a valid deed. Had the conveyance been to the association called "the town of Lancaster and the Lancaster Seminary," all the cases are uniform that it would have been void, and we do not see how the matter is helped by making the board of directors the grantee.

There could not be a board of directors any more than a corporation without emanating in some way from the government. Had the deed been made to one or more of this supposed board by name, describing them as directors or trustees, the deed might have been upheld on the authority of the Massachusetts and New

Jersey cases above referred to, although the decision in Minnesota holds the deed void even in such a case.

It will be understood that we have made no reference to any cases involving the construction of deeds or bequests to charitable uses under the statute of Elizabeth, for the reason that such grants are controlled by principles and rules peculiar to that class of conveyances.

The deed of Douthitt in 1839 being a nullity, no question of estoppel under it could arise. The plaintiffs, it may be conceded, seem to have no meritorious or equitable claim, except so far as they represent one of the original members of the association which advanced the money to pay for this land. But they have the legal title, and the defenses set up in the answer are unavailing. No outstanding title is shown, and no sufficient length of possession under the statute of limitations.

The judgment must therefore be reversed and the case remanded. The other judges concur.