Normandy Consolidated (School) District of St. Louis County and Arthur G. Skelly et al., Appellants, v. Walter E. Harral et al., Trustees for Plymouth Securities Company, and Laurel Hill Cemetery Association and William E. Reasor et al., Directors of Said Association.

Division One, July 30, 1926.

1. **DEMURRER: How Far an Admission: Cemetery.** A demurrer to the petition admits as true a statement of facts, but does not admit statements which are mere conclusions, or expressions of opinion, or predictions of what will happen in the future. Allegations that the use of described land for a cemetery will depreciate the value of others lands in the school district, and will have an injurious effect upon the minds and bodies of the school directors and other residents, through their daily seeing burials and funeral processions, and that their health will be impaired through the unsanitary conditions arising from the maintenance of the cemetery, if not accompanied by statements of facts showing the existing conditions, are not admitted by the demurrer.

2. **CEMETERY: Nuisance: Demurrer.** A cemetery is not a nuisance **per se,** even though it be near to residence property, but it may be or become a nuisance against which relief will be granted at the instance of those injured

thereby.    And an allegation that the establishment and maintenance of a cemetery will result in loss of revenue to the plaintiff school district, (a) because the value of other lands will be depreciated by it and (b) because the lands devoted to the cemetery will be exempted from taxation, is not a statement of facts from which the court can see that the cemetery must become a nuisance unless restrained, and is not admitted to be true by a general demurrer.

3. ———: **Unnecessary Number: Nuisance: Opinion.** An allegation that the number of cemeteries already existing is more than necessary and constitute a nuisance by their very number, and that the establishment and maintenance of another by defendants will constitute it a nuisance, is an expression of an opinion, or a conclusion, and does not state a course of action for injunction.   It is not enough to allege that the existing cemeteries are unnecessary, or that they and the one about to be established constitute a nuisance; to state a cause of action the facts alleged must clearly show that the maintenance and establishment of the proposed cemetery is a nuisance; and an unnecessary number is not a nuisance **per se.**

4. ———: **Nuisance: Injunction: General Allegations.**   Injunction will not lie to restrain the use of property, which it is claimed will constitute a nuisance, unless the use to be restrained is itself a nuisance, or the petition alleges facts from which the court can see that it must become one.   A cemetery is not a nuisance **per se,** and mere allegations that the proximity of the proposed cemetery will cause a depreciation in the value of near-by residence property, coupled with the further allegation that the number of existing cemeteries is greater than necessary and that the lands devoted to cemetery uses will escape taxes necessary for the maintenance of schools, do not state a cause of action for an injunction.

5. ———: **Exemption from Taxation.**   The owner of land has the right to devote it to cemetery purposes; and if he has that right, then the fact that, if he devotes it to cemetery uses, it will under constitutional provisions become exempt from taxation, affords no right to a school board or other taxpayers to prevent him from devoting it to such uses.

6. ———: **Conveyance to Trustees: Unincorporated Association: Perpetuity: Concern of Lot Owners: Injunction: Nuisance.**   Land was conveyed to three individuals and their successors as trustees for the establishment and maintenance of a cemetery.   The trustees were to plat and improve the land for cemetery purposes, in sections of twenty-five acres each, as necessity arose, and as soon as a plat of a section was recorded they were to convey it to the "board of trustees" of an unincorporated cemetery association, and the board was to receive ten per cent of the money arising from sale of lots, and in consideration therefor was to undertake the perpetual care of the property.   But the trustees conveyed two such sections to the cemetery association, and not to the board or to named persons as trustees for it.   The statute (Sec. 1094, R. S. 1919) authorized property for cemetery purposes to be placed in trust with "any person, association or corporation duly authorized and capable of qualifying as trustee." **Held,** first, that an unincorporated voluntary association cannot, as such, and under its name, take title to property, but it may take title by and in the name of its trustees; that the three trustees who held the legal title might voluntarily correct their ineffectual conveyance by a grant to trustees for the voluntary association, to hold the sections in trust for the benefit of the lot owners, or the lot owners might require that to be done; that the plaintiffs, who seek by injunction to enjoin the trustees and the unincorporated association from establishing the cemetery, are not concerned with the strict legal form of the arrangement attempted to be made by the owners and those who, as lot owners, are to have the care of the property, but under the statute in force the owners could devote the property to cemetery purposes, and the legal status of the arrangement is not for con-

sideration in determining the right of plaintiffs to the injunction.     **Held,**
second, that the deed to the voluntary association will not, under the cir-
cumstances, be held to violate the rule against perpetuities, although the
cemetery is to be perpetual.

Corpus Juris-Cyc. References: **Associations,** 5 C. J., Section 32, p. 1343,
n. 98; Section 33, p. 1344, n. 6.   **Cemeteries,** 11 C. J., Section 16, p. 57, n. 24
New.   **Nuisances,** 29 Cyc., p. 1169, n. 46, 48; p. 1170, n. 49; p. 1241, n. 89,
91, 93; p. 1242, n. 94.   **Pleading,** 31 Cyc., p. 333, n. 76; p. 335, n. 77, 79.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt,* Judge.

AFFIRMED.

*Charles Erd* and *Alroy S. Phillips* for appellants.

(1)   Injunction should lie to prevent the location of another
cemetery in a locality already having more than is necessary.   29
Cyc. 1225; 11 C. J. 56.   (2)   The acts of respondents may be
enjoined because they are illegal and harm appellants.   (a) The
common-law trust is illegal and cannot operate the cemetery, because
the cemetery is perpetual and the life of the trust is limited by the
rule against perpetuities.   Dunn on Business Trusts, pp. 24, 28, 32, 33,
415; Sears on Trust Estates (2 Ed.), pp. 173, 176, 196; Perry on
Trusts (6 Ed.) pp. 16, 17, 610, 619.   (b)   The voluntary association is
illegal and cannot operate the cemetery, because being unincorpo-
rated, it cannot take title thereto.   Douthitt v. Stinson, 63 Mo. 268;
Keith & Perry Coal Co. v. Bingham, 97 Mo. 196; Talbert v. Grist,
198 Mo. App. 492.   Having no means of keeping up its existence, it
cannot take or execute a permanent trust.   40 Cyc. 1053; In re
Tichnor, 13 Mich. 44; Dunn on Business Trusts, pp. 32, 33.   Being
organized for gain, it is not charitable and cannot take and adminis-
ter the perpetual-care fund, because to do so would violate the rule
against perpetuities.   11 C. J. 54, 324; McCarthy v. Jacobs, 123
N. E. (Ill.) 557; Shippee v. Industrial Trust Co., 110 Atl. (R. I.)
410; Mason v. Library Assn., 237 Ill. 442.   (3)   In Missouri, the only
associations which may own and operate a cemetery and perpetual-
care fund are those which are incorporated.   Secs. 1080, 1094, 1087, R.
S. 1919.   (4)   Our statutes provide for the organization of cemetery
associations with perpetual charters, and for a judicial determination
of the public necessity therefor, and respondents should not be per-
mitted to evade the decision thereof against them in the *pro forma*
decree proceedings, to the prejudice of appellants.   Secs. 10267,
10265, R. S. 1919; United States v. Lehigh Valley Railroad, 220 U. S.
257.   (5)   The loss of taxes by appellant school district is alone
sufficient to show such peculiar and special damage as to entitle it
to maintain this suit.   (6)   Injunction is a proper remedy to restrain

an illegal act causing peculiar damage to a school district or an individual. School District v. Smith, 90 Mo. App. 225; Shelton v. Lenz, 191 Mo. App. 699.

*Jourdan & English* and *Thompson & Thompson* for respondents.

(1) A cemetery is not a nuisance *per se.* 5 Am. & Eng. Ency. Law, 791; Kingsbury v. Flowers, 65 Ala. 479; Lake View v. Rose Hill Cemetery Co., 70 Ill. 191; Begein v. Anderson, 28 Ind. 79; Musgrove v. Catholic Church, 10 La. 431; Humphrey v. Front, 109 N. C. 132; 29 Cyc. 1169; Union Cemetery Assn. v. Kansas City, 252 Mo. 466; 11 C. J. 56; Elliott v. Ferguson, 83 S. W. 56; Payne v. Wayland, 131 Iowa, 659; Dunn v. Austin, 77 Tex. 139. (2) Any person can open, own and conduct a cemetery, and it may be incorporated or not. Sec. 1080, R. S. 1919; Stewart v. Coshow, 238 Mo. 673; Shiel v. Walker, 114 Mo. App. 521. (3) The rule against perpetuities is not violated. Stewart v. Coshow, 238 Mo. 673; Schee v. Boone, 243 S. W. 882. (4) A voluntary association can take the title to property in the name of its board of trustees. 25 Am. & Eng. Ency. Law, 1133; Colley v. Wilson, 86 Mo. App. 396; Kuhl v. Meyer, 35 Mo. App. 206; Douthitt v. Stinson, 73 Mo. 199; Kuhl v. Meyer, 42 Mo. App. 474; White v. Rice, 112 Mich. 403; Troy Factory v. Corning, 45 Barb. (N. Y.) 231; Liggett v. Lodd, 17 Ore. 89; Crawford v. Gross, 140 Pa. St. 297. (5) The trustees of the Laurel Hill Cemetery Association, a voluntary association, can receive gifts and bequests to be used as a perpetual-care fund. Sec. 1094, R. S. 1919. (6) Cemeteries are not only a nuisance *per se,* but are expressly recognized by the laws of Missouri. Sec. 1080, R. S. 1919. (7) A cemetery cannot be declared a nuisance on the ground that it is offensive to the esthetic sense or that it does not appeal to the fancy, delicacy or fastidiousness of anyone. Sutton v. Finley Cemetery Assn., 270 Ill. 1; Monk v. Packard, 71 Me. 309. (8) It is no ground to declare a cemetery a nuisance on the theory that other property in the neighborhood may be injured or depreciated in value. 29 Cyc. 1169; Elliott v. Ferguson, 83 S. W. 56; Dunn v. Austin, 77 Tex. 139. (9) To enjoin a nuisance the bill must make it appear that plaintiff has a clear right to the relief sought. It must charge that the acts complained of are a nuisance, show all matters requisite to complainant's right to the relief asked, and defendant's liability for the injury. Averments of mere conclusions are insufficient. And so, where the thing complained of is not a *per se* nuisance, the facts which make it such must be averred, and a mere averment that it is or will be a nuisance is not sufficient. 29 Cyc. 1241; Thebeaut v. Canova, 11 Fla. 143; Begein v. Anderson, 28 Ind. 79; Adams v. Michael, 38 Md. 123; Dunn v. Austin, 77 Tex. 139;

Elliott v. Ferguson, 83 S. W. 56. (10) While a cemetery is not a nuisance *per se,* it may, of course, like anything else, become a nuisance if not properly managed, used, handled or employed, but in a bill asking to have a cemetery enjoined, since it is not a nuisance *per se,* the facts must be stated in detail, from which the court can find that it is a nuisance, before a petition for injunction will state a cause of action. The detailed facts must be stated, and not mere conclusions of fact. McDonough v. Robbins, 60 Mo. App. 156; Kingsbury v. Flowers, 65 Ala. 479; Begein v. City of Anderson, 28 Ind. 79; Holbrook v. Morrison, 214 Mass. 249; Fallon v. Shilling, 29 Kan. 294. (11) One has a right to use property for lawful purposes. State ex rel. v. McKelvey, 301 Mo. 1; City of St. Louis v. Evraiff, 301 Mo. 231.

LINDSAY, C.—This suit was brought in the Circuit Court of St. Louis County, and the venue changed to Audrain County.

The judgment appealed from was entered upon a demurrer to plaintiff's petition. The petition is somewhat long, but the questions raised can best be understood only by setting it out. Omitting description of the land in question, which it is said, includes 179 acres, it is as follows:

"1. Plaintiffs state that at all times hereinafter mentioned plaintiff Normandy Consolidated (School) District was and still is a corporation duly organized and existing under the laws of Missouri relating to consolidated public schools, having the power to sue and be sued as such, and owning and conducting public common and high schools, and exercising the other powers provided by law for such school districts within a public school district in St. Louis County, Missouri, commonly known as the Normandy Consolidated School District; and that plaintiffs Arthur G. Skelly, Dr. J. B. Thurman, T. Walter Hardy, R. B. Cornwall, Oliver G. Hanson and Sam B. Coles at all said times were and still are assessed taxpaying citizens owning real and personal property in said school district, and residents thereof, and comprise all of the members of the school board of said district, and as such have an interest in the subject-matter of this action.

"2. Plaintiffs further state that at all of said times defendants Walter E. Harral, M. Curry Giles and William E. Reasor were and still are the trustees of the Plymouth Securities Company, a common-law trust, organized and in business for profit as hereinafter more particularly described, and that at all said times defendants Walter E. Harral, M. Curry Giles, William E. Reasor, O. B. Bottorff and H. A. Schneider were and still are the sole members of the Laurel Hill Cemetery Association, a voluntary association, organized and

in business for profit as hereinafter more particularly described, and constitute the board of trustees of said association.

"And for their cause of action plaintiffs state as follows:

"3. Some time prior to July 3, 1923, defendants formed and undertook to carry out a plan of acquiring title to a large and valuable tract of land in said school district, and for profit to engage in the business of converting the same into a cemetery, selling the burial lots therein at a large profit, and of operating the same as a cemetery for profit.

"4. And in pursuance of said plan, some time prior to July 3, 1923, defendant Schneider acquired the fee-simple title to the following-described real estate, situated in said school district, in the County of St. Louis and State of Missouri, of the value of more than \$200,000, to-wit: [Then follows description.]

"5. In pursuance of said plan, on July 3, 1923, defendants Harral, Giles, Reasor, Bottorff and Schneider formed themselves into a voluntary association for the purpose of obtaining a *pro forma* decree of incorporation for an association under articles of agreement executed by said defendants on said day. Said articles provided that the association should be known as the Laurel Hill Cemetery Association, located in St. Louis County, Missouri, with a perpetual term of existence, and that its purposes were to provide and maintain in said county a cemetery for the burial of white human remains, to acquire, hold and own such real and personal property as may be proper in the establishment, improvement, management and maintenance of such cemetery, and to take and hold any gift, devise or bequest and to apply the same, or the income thereof, to the maintenance or improvement of such cemetery, its lots, walks, drives, tombs, monuments, mausoleums or other structures thereon, according to the terms of such gift, devise or bequest. Said articles further provided that said association should have no capital stock divided into shares; that it was not organized for pecuniary profit or gain in any form; that its funds should only be used for the aforesaid purposes; that it should pay no dividends to its members, though reasonable salaries might be paid to its officers, agents and servants, and that its membership should be composed entirely of owners of lots in said cemetery, who should have one vote for each lot.

"Said articles further provided that the affairs of said association should be transacted and its property managed, controlled and held by a board of trustees to be composed of five members, said five defendants to constitute the first board and to hold office until their successors are elected as may be provided in the by-laws; that annual meetings of the members be held at the cemetery; that the board should elect officers and employ agents and servants, and might fill vacancies on the board until the next annual meeting of the mem-

bers, and that said board should take and hold the 'title as such board of trustees to all property, real, personal or mixed, coming to the association.'

"6.   In pursuance of said plan, on July 5, 1923, defendants Harral as president, Giles as secretary, and Reasor as treasurer, duly filed in the Circuit Court of St. Louis County, Missouri, a petition for a *pro forma* decree of incorporation for said association, to which was attached the said articles of agreement, and the said court duly proceeded to hear said petition.  At said hearing the facts stated in this petition were presented to the court; it was shown to the court that the proposed cemetery was to be located upon the real estate above described; the plaintiffs herein presented their objections to the court; the public necessity of the cemetery was an issue before the court, and, as provided by law, the court duly proceeded to inquire into the public usefulness of the proposed corporation, and, after having duly heard and considered said petition, evidence and issues, on July 23, 1923, said court duly entered an order denying said petition for a *pro forma* decree 'for the reason,' as shown by the record in said cause, 'that there are more cemeteries in St. Louis County than needed.'  On July 25, 1923, said petitioners duly filed in said court their motion to set aside said order refusing a *pro forma* decree.   On July 28, 1923, Charles Erd and Julius R. Nolte duly entered their appearance in said cause as attorneys for plaintiff Normandy Consolidated (School) District, and presented arguments to the court in opposition to said motion, and after hearing the same and the arguments for the petitioners the court duly entered an order overruling said motion, and said petitioners have never appealed from said orders of said court.  And by reason of the premises it has been adjudged between plaintiff school district and defendants that there is no public necessity for defendant's cemetery, and that defendants cannot use and maintain said real estate for cemetery purposes, and defendants are now estopped from contending to the contrary and from so using and maintaining said real estate.

"7. In pursuance of said plan, and for the purpose of evading said decision of said court, on July 23, 1923, said defendants caused said real estate to be conveyed to defendant Schneider, who on said day conveyed the same to defendants Harral, Giles and Reasor, who on said day executed, filed and caused to be recorded in Book 594, page 527, of the records in the office of the Recorder of Deeds for St. Louis County, Missouri, a declaration of trust, declaring that as trustees, under the name of Plymouth Securities Company, a trust, they and their successors hold title to said real estate and all other funds or property which might be acquired by them as such trustees, to be held, used and managed by them according to the provisions of said declaration of trust, for the benefit of the *cestui que trust*.

none of whom are named therein. Said declaration of trust provides that the trustees shall convert the estate into money and distribute the same ratably among the holders of certificates of beneficial interest, to be sold and issued by the trustees in the amount of 4,000 shares of the par value of $100 each, which certificates may be acquired and owned by the trustees, and all of which certificates are owned by said five individual defendants; that in their uncontrolled discretion the trustees may postpone such conversion and distribution not longer than twenty years after the death of the last survivor of said three defendant trustees, and that until said conversion the interests of the *cestui que trust* shall be considered personal property. Said declaration of trust further provides that pending final conversion and distribution the trustees may hold, manage, use, maintain, develop, mortgage, pledge or otherwise dispose of the estate, may subdivide the same into lots or plats for residence, business, cemetery, park or other purposes, may improve the same with buildings, lots, walks, sewers, and other improvements, may make all kinds of contracts with 'any person, firm or corporation' relating to the development and sale of said property, may acquire and hold such stocks, shares and securities of other corporations or associations as to them may seem proper, and may invest and loan the estate as to them may seem proper, and that said trustees may do any and all things with respect to the estate in their full discretion the same 'as if they were themselves the sole and absolute beneficial owners thereof in fee simple.' Said declaration of trust further provides that the trustees shall receive the income and profits of the estate and may distribute to the beneficiaries from time to time such portions thereof as to them may seem proper; that the *cestui que trust* shall have no legal or equitable interest or title to any several items of the estate and their rights shall relate only to the income and to the net distributable proceeds of the liquidation of the trust; that the death of any *cestui que trust* shall not terminate the trust; that the trustees may employ agents and servants and shall be entitled to compensation for their own services; that they shall keep books of account and shall render an account to any beneficiary requesting the same; that all vacancies among the trustees shall be filled by the remaining trustees; that the terms of said declaration of trust may only be amended by an instrument signed by all of the trustees and assented to by two-thirds in interest of the *cestui que trust,* and that at the end of twenty years from and after the death of the last survivor of defendants Harral, Giles and Reasor, all property of every kind held by the trustees shall be sold by the trustees and the net proceeds thereof distributed among the persons entitled thereto.

315 Mo.—39.

"8. And in pursuance of said plan, and for the purpose of evading said decision of said court, on July 23, 1923, defendants Harral, Giles, Reasor; Bottorff and Schneider, by an instrument of writing on said day filed and recorded in book 623, page 9 of said records, organized themselves into a voluntary association known as the Laurel Hill Cemetery Association, with articles of association providing in all respects the same as those above set forth and which were filed with said petition for a *pro forma* decree, save that said voluntary association was unincorporated. Said five defendants were and still are the only members of said association.

"9. And in pursuance of said plan, and for the purpose of evading said decision of said court, on July 23, 1923, by an instrument in writing on said day recorded in book 597, page 355 of said records, defendants Harral, Giles and Reasor, as trustees of said Plymouth Securities Company, made and entered into an agreement with said Laurel Hill Cemetery Association, acting by defendant Bottorff as its president and defendant Giles as its secretary, by the terms of which said trustees agreed to lay out, plat, develop and fully improve at their own cost and expense, portions of said real estate in sections, for the purpose of a modern perpetual-care park cemetery and burial grounds to be known as Laurel Hill Cemetery, under plans approved by both parties thereto, and with the necessary walks, driveways, roads, sewers, entrances and necessary buildings, and to deed said walks, parks and improvements to said association as soon as the plat of the section is recorded, the sections to be laid out and developed from time to time as necessary. In said instrument said trustees further agreed as soon as the plat of the section should be recorded, 'to convey to the board of trustees' of said association all lots in sections being developed bearing numbers ending with the serial number naught, and to give said association ten per cent of all money received by said trustees from the sale of the remaining lots in any section, in consideration for which said association agreed to assume the perpetual care and maintenance of sections of said cemetery of not less than 25 acres each when fully developed, provided it has, or is guaranteed by said trustees, a perpetual care fund of at least $100,000 for each such section, and said association further agreed from then on to care for and maintain, clean and police all of said cemetery so developed, and the lots; graves, buildings, roads, walks, fences, drains, lawns, trees, shrubbery and flowers, and in general to take perpetual care of the cemetery and burial park so developed under the direction and management of said trustees. Said association further agreed to create a perpetual care fund with which to care for and maintain said cemetery out of the moneys so received from said trustees and out of the sale of the lots so conveyed to it by said trustees,

and to invest the same in safe securities, and use the income thereof in maintaining and caring for the developed portions of said cemetery. Said agreement further provides that the said trustees shall have full and complete supervision and general management over the said property, development and sale of lots in said cemetery, except as to the perpetual care fund and the sale of donated lots, and shall be governed by any reasonable rules and regulations the association may make concerning the cemetery, and that said agreement shall remain in full force and effect until all of the lots owned by the said trustees are disposed of.

"10. And in pursuance of said plan, and for the purpose of evading said decision of said court, by an instrument dated and recorded July 23, 1923, in book 594, page 524, of said records, defendants Harral, Giles and Reasor, as trustees aforesaid, after reciting their desire to develop all of said real estate as a cemetery, and the purpose of said association to establish, operate and maintain such cemetery, in consideration of one dollar, granted, bargained, sold, conveyed and confirmed unto the 'Laurel Hill Cemetery Association,' in the language and name quoted, the roadways, drives, walks, sunken gardens, parks and basins in sections one and two of said cemetery as shown on plats of said two sections recited to have been filed with the recorder of said county, for the uses and purposes of the present and future owners of the burial lots and graves in said cemetery, but not for public uses and purposes, subject to certain conditions and restrictions.

"In said instrument said trustees further dedicate all of the land in said two sections to the uses and purposes of a burial park and place of interment of human remains of the Caucasian race exclusively, reserving to themselves the legal title to the lots therein with full power to sell the same subject to the conditions and restrictions in said instrument. Among the conditions and restrictions it was provided that every lot in said sections should be subject to the rules and regulations of the association, that the location of walks and roads might be changed by the association with the consent of the trustees and that each subsequent owner should be bound by such conditions and restrictions, rules and regulations as might thereafter be established for the government of said cemetery; which instrument was also signed in the name of said association by defendant Bottorff as president.

"11. There are 44 cemeteries in the city and county of St. Louis, and 13,000 human deaths occur each year in said city and county. There are already eleven cemeteries located in the Normandy Consolidated School District, in six of which there are now unoccupied and available to the general public, for burial purposes, lots sufficient for 1,029,107 graves, or sufficient in these six alone to meet the burial

needs of said county and city for the next 79 years. In the other five cemeteries in said district there are also unoccupied and available to the general public for burial purposes, lots sufficient for a very large number of graves. There is no public necessity for another cemetery in said district or county, nor for the one proposed to be established by defendants, and the same is in no way useful to the public.

"12. Plaintiff school district is now conducting six grade schools and a senior and junior high school, the expense of which is paid out of taxes assessed upon real and personal property within the district. School taxes collected by the district for 1922 amounted to $118,000, all of which was required for the proper operation of said schools, and much more than that said sum will be necessary for said purposes for the year 1923 and thereafter. Any curtailment in the taxes for school purposes will deprive all or a large part of more than 3,000 children of school age within the district of the proper educational advantages to which they are entitled under the Constitution and laws of Missouri. The eleven cemeteries now within the district embrace large tracts of valuable land which have been exempted from taxation by the taxing authorities of the county, and by reason of the unusually large number and size of said cemeteries the school district has been unusually deprived of revenue for school purposes, and it is greatly in need of revenue. Were the land of defendants not used as a cemetery and not exempted from taxation, the school taxes alone upon the same would amount to over $1400 a year, and if defendants are permitted to carry out their plan and use said real estate as a cemetery, and the same is exempted from taxation, said school district will each year be deprived of revenue from school taxes on the same in the sum of more than $1400, which damage will flow to plaintiffs by reason of the unlawful acts and plan of defendants.

"13. And by reason of the unlawful acts and plan of defendants, plaintiffs will be further damaged as follows: If not used as a cemetery, the real estate of the plaintiffs will be improved with valuable residences and stores, which will increase the value of said real estate and will also increase the value of all of the real estate in the district, as well as that of the plaintiffs, all of which will increase the taxable wealth of the district and the school revenue of plaintiff school district. Whereas, if plaintiff's land be used as a cemetery, by reason of there being no necessity for it, the same will lie idle and unimproved for many years, and will depreciate the value of all other property in the district, including that of the plaintiffs, which will cause an additional loss of school revenues to plaintiff school district. There are already too many cemeteries in said district, in fact so many as to constitute a nuisance, and the

number and size of same, and the nature thereof as cemeteries, is depreciating the value of all property in the district and causing plaintiff school district to lose revenue and become impoverished, which damage will be further increased by the cemetery of defendants. And unless the establishment of the cemetery of defendants and other new cemeteries is prevented, plaintiff school district will be impoverished and destroyed. To add the cemetery proposed by the defendants to the group of cemeteries in the district will also have an injurious effect on both the minds and bodies of the plaintiffs and the residents of said school district who would daily be greeted on departing from and returning to their homes with a long' procession of burial grounds and funerals, and said proposed cemetery would result in the impairment of the health of plaintiffs and the community, and the health of plaintiffs and their families and the other inhabitants of the district will become greatly impaired by the unsanitary condition arising from the maintenance of defendants' proposed cemetery.

"14. Plaintiffs further state that all of the defendants have a common purpose and are acting in pursuance of a common plan to make a pecuniary profit out of the sale of lots on said cemetery and its operation as such; that defendant Laurel Hill Cemetery Association is a mere instrument owned, controlled and used by defendant trustees as a part of their said scheme and plan, and that notwithstanding the statement in its articles of association that it is not organized for profit, in fact it is organized for profit and is part and parcel of defendants' plan to make gain; that said cemetery and plan and scheme, said common-law trust and said association, have no charitable, benevolent, religious or fraternal features or purposes, and are such as were never contemplated or intended under the Constitution and laws of Missouri to be exempt from taxation; and that defendants, by advertisements and solicitors are representing to the public that investors in said trust and in lots in said cemetery can make large profits thereby.

"15. Plaintiffs further state that defendants intend to and are, and unless restrained by this court, will carry out their unlawful and evasive purpose, plan and scheme aforesaid, and will use said real estate as a cemetery, and will apply to the taxing authorities to have the same exempted from taxation, and said authorities intend to and will exempt the same; and that the said acts of defendants have caused and will continue to cause irreparable loss, injury and damage to the plaintiffs in a sum exceeding $25,000 for which the plaintiffs have no adequate remedy at law.

"16. Wherefore, plaintiffs pray the court to perpetually enjoin the defendants, their officers, agents and servants from carrying out their said unlawful purpose, plan and scheme, from selling burial

lots in said land and from using the same as a cemetery, and from doing any act in furtherance thereof, and for such other and further relief as to the court may seem meet and proper in the premises."

The demurrer admits as true statements of facts, but does not admit statements which are merely conclusions, or expressions of opinion, or predictions as to what will happen in the future. Having in view the character and effect of the occupancy of the land for a cemetery, plaintiffs allege in the thirteenth paragraph of the petition that such use will depreciate the value of other property in the school district; that it will have an injurious effect on the minds and bodies of plaintiffs and other residents, through their daily seeing burials and funeral processions, and that their health will be impaired through the unsanitary conditions arising from the maintenance of the cemetery, but there is no statement showing the physical conditions existing.

There is also an allegation that the establishment and maintenance of a cemetery will result in loss of revenue to the district, arising in two ways—first, the depreciation in value of other lands, and second, the exemption from taxation of the land devoted to the cemetery. "A cemetery or burial ground is not a nuisance *per se,* even though it be near to residence property, but it may be, or become, a nuisance against which relief will be granted at the instance of those injured thereby." [29 Cyc. 1169.]·

The appellants do not contend that a cemetery is a nuisance *per se.* It is also alleged that there are already so many cemeteries in the district as to constitute a nuisance, and the theory is that the addition of another will enlarge, or intensify that nuisance, and also further impoverish the district.

The pleader in respect of the foregoing matters, uses general terms, conclusions or predictions, except as to the statement of the number of cemeteries already existing in the district, and the statements as to their capacity. We are cited to no authority to support the contention that the existent cemeteries, said to be more than are necessary, constitute a nuisance by reason of their mere number, or, that the addition of the proposed cemetery to that number, by reason thereof, will constitute it a nuisance. In Holke v. Herman, 87 Mo. App. l. c. 134, the opinion refers to the doctrine said by the writer, Judge GOODE, to be "well nigh universally upheld, that injunction will not be granted to restrain a use of property, which, it is claimed, will create a nuisance, unless the use to be restrained is *ipso facto* a nuisance, or the pleader charges facts from which the court can see that it must become one." Again in the same opinion referring to the pleading required for injunction against alleged threatened injury, it is said that "in such case, the bill must allege sufficient facts for the court to see clearly that the thing complained of will con-

stitute a nuisance. It is not enough to allege in general terms, that probable injury will result; the bill must state facts, and not opinions." [14 Encyc. Pleading & Practice, 1144; 29 Cyc. 1241.] In Elliott v. Ferguson, 83 S. W. (Tex.) 56, it was held that mere proximity of a proposed cemetery to residence property and the consequent depreciation of its value affords no right of action to restrain the establishment of a cemetery. In Dunn v. Austin, 77 Tex. 139, the plaintiffs sought an injunction against the enlargement, by the city, of an existing cemetery, alleging that they owned lands adjoining and almost surrounding the old cemetery, and the proposed additions. They made allegations, that by the proposed enlargement, the atmosphere would be contaminated, and the wells poisoned. They did not describe the distance of their lands from the cemetery, nor the altitude of the cemetery, nor other like facts. The allegations were described as being expressions of what the plaintiffs feared. The holding was that the fact the cemetery might render property in the neighborhood less valuable, was no ground for an injunction. In Sutton v. Findlay Cemetery Association, 270 Ill. 1, the allegations of threatened injury were general and lacking in definite certainty. In the opinion in that case it was said that "relief by injunction is so severe in its consequences that it is not to be granted in such a case, except when the right to it is clearly and conclusively made out." There was the further statement, l. c. 19: "A cemetery may be objectionable or offensive to the taste of an adjoining owner, but it is not a nuisance *per se,* and its use cannot be enjoined merely because it is offensive to the æsthetic sense of an adjoining proprietor. Before it can be abated, or its use enjoined, it must be clearly and satisfactorily proven a nuisance, and this cannot be done by evidence tending to show that it might become such." Like expressions are found in Monk v. Packard, 71 Me. 309, and the like sense is to be gathered from the holding and discussion in Union Cemetery Association v. Kansas City, 252 Mo. 466.

Counsel for appellants concede that they know of no authority passing upon the question whether too many cemeteries in a given locality may not constitute a nuisance. There is in the petition a statement that the proposed cemetery is unnecessary, and it is urged that this is admitted by the demurrer, but we cannot regard the statement that it is unnecessary, as being other than the statement of an opinion or a conclusion. Under the statements of the petition, we are not authorized to declare that the cemeteries already existent, by reason of their mere number, constitute a nuisance. Nor can we say that the establishment and maintenance of the proposed cemetery, a thing not a nuisance *per se,* will constitute a nuisance because of the number of others in the district, and because of the allegation that it is unnecessary. If the owners of land may

lawfully devote it to cemetery purposes, then the facts making the establishment and maintenance of the particular proposed cemetery a nuisance would have to be made clear under the pleadings and the evidence.

There is a further allegation that if the land be devoted to use as a cemetery, it will be exempt from taxes. But, under that, the attempted solution of the question goes back to the other question, whether the owner has the right to devote the land to the purpose mentioned. If he may do so, then the fact that under the constitutional provision the land is exempt from general taxes affords no right to another person to prevent the contemplated use, upon the ground that, because of the use, the land will cease to be taxable.

The major portion of the brief for appellants is devoted to a consideration of the method and character of ownership and manner in which the cemetery is to be held and operated. It is urged that Plymouth Securities Company, as a common-law trust, is illegal, and cannot operate the cemetery because the cemetery is perpetual and the life of the trust is limited by the rule against perpetuities.

The title to the land vested in the three individual defendants first named, as trustees for the purposes stated in the declaration of trust (Sec. 1080, R. S. 1919), concerns ownership of a cemetery, not private, by any person or association. That section with some other related sections, was under consideration in Stewart v. Coshow, 238 Mo. 662.

In that case a testator had devised his estate of land to certain named persons and their successors as trustees, for the establishment and maintenance of a cemetery. Of the 500 shares given, there was to be as much included in the cemetery as the trustees saw fit, and the remainder, or its income, was to be used for maintenance of the cemetery. The will originally provided that the trustees should incorporate themselves into a cemetery association, but the provision directing such incorporation was revoked by a codicil. The plaintiffs were the heirs at law of the testator, and it was claimed that the will was void as violating the rule against perpetuities. Under the facts, it was held that the purpose of the testator was to establish a public cemetery. As to the character of ownership of the cemetery, it was said, l. c. 673: "It is not necessary, under the law of this State, for the establishment of a public cemetery that a corporation be formed to hold the title and manage it (Secs. 1302, 1310, 1311, R. S. 1909), although that would be a convenient course, and is expressly authorized by statute. [Sec. 3425, R. S. 1909.] Under the will and codicil, the trustees may or may not, as they see fit, organize a corporation."

The other conclusion was stated thus: "Viewing the will as designed to establish a public cemetery there is nothing in it re-

pugnant to the rule against perpetuities. The rule against perpetuities is designed to forbid the creation of a future estate that will not vest within the lifetime of a person in being and twenty-one years and ten months thereafter. [Gates v. Siebert, 157 Mo. 254, 1. c. 267.] The estate here created vests immediately in the trustees. The rule against perpetuities is not violated because the use to which the land is dedicated may continue in perpetuity; if it were otherwise, then no cemetery could be established except for a limited period. Besides, our statute expressly authorizes the dedication of land to this purpose (Sec. 1303, R. S. 1909), and even the condemnation of land for the enlargement of the cemetery (Section 1310)." The provisions of the will were considered and held valid, whether as constituting a gift to a public charity, or, as a provision authorized by statute. Upon that it was said: "Appellants in their brief seem to concede that if this is a gift to a public charity it does not violate the rule against perpetuities, and that if it is authorized by statute it is valid. That it is authorized by statute is shown by the statutes above quoted, and that it is classed as a public charity, although not so expressly named, is shown by other statutes and by the Constitution." That case was referred to in Schee v. Boone, 295 Mo. 1. c. 225, wherein the nature of the rule against perpetuities was under consideration, and where it was said "that the rule is only concerned with the time of the commencement of the vesting of the estate, and not with its duration."

In Shiel v. Walker, 114 Mo. App. 521, the right of a private person to plat and sell his land for cemetery purposes was recognized. Counsel for appellants admit that under Section 1080, Revised Statutes 1919, the right to operate a cemetery is conferred upon every person or association owning one. They direct attention to the provisions of Section 1094, Revised Statutes 1919, which is as follows: "It shall be lawful for any grantor, devisor, donor or trustee to give, grant, devise, bequeath or place in trust any real or personal property, or the income therefrom, for the use and benefit of any public or private cemetery in this State or for the grading, seeding, sodding, mowing, or otherwise maintaining, improving or beautifying of any grave, lot, stone, monument or mausoleum in any such cemetery, and any person, association or corporation duly authorized and capable of qualifying as trustee is hereby authorized and empowered to receive and hold any such real or personal property, or the income therefrom, and expend the same for any or all such uses and purposes, under the terms and conditions of any such gifts, grant, devise, bequest or trust."

It is urged that under the terms of that section, the right therein given is limited; that the Laurel Hill Cemetery Association as an unincorporated association is incapable of ownership, and that the

section authorizes property for cemetery purposes to be placed in trust only with "any person, association, or corporation duly authorized and capable of qualifying as such trustee." Upon that, it is further argued that under our statutes only incorporated associations may receive such grants and operate cemeteries.

It is true that an unincorporated voluntary association cannot, as such, and under its name, take title to property. [Douthitt v. Stinson, 63 Mo. 268; Keith & Perry Coal Co. v. Bingham, 97 Mo. 196; White Oak Grove Benevolent Society v. Murray, 145 Mo. 622.] In the last-mentioned case, referring to the decisions in Douthitt v. Stinson and other like cases, it was said, l. c. 628: "But it has long been established in this State that 'these decisions refer entirely to the transfer of the legal estate and do not touch the equitable rights of the parties growing out of the transaction.'" But an unincorporated society, or voluntary association of persons may take title by and in the name of trustees. [Douthitt v. Stinson, 73 Mo. 199; Colley v. Wilson, 86 Mo. App. 396; 25 Am. & Eng. Encyc. Law, 1133.]

Under the plan described, the cemetery association would be composed of the persons owning or becoming owners of lots. By the plan, as adopted, and outlined in paragraph 9 of the petition, the trustees holding title to the land were to plat and improve, for cemetery purposes, sections of land of twenty-five acres each, from time to time as became necessary, according to plans approved by both parties, and were to convey the walks and improvements to the association as soon as the plan of the section was recorded. The agreement further was that as soon as the plat of the section was recorded the trustees should convey to "the board of trustees" of the association, all lots bearing numbers ending with the serial number naught; that the association should receive ten per cent of the money from the sale of other lots, and in consideration therefor should undertake the perpetual care of the property, that agreement also including the condition that the association was guaranteed by the proprietary trustees a care fund of at least $100,000 for each section.

According to the statements of the petition, the proprietary trustees made or attempted to make their conveyance, appurtenant to sections 1 and 2, to the Laurel Hill Cemetery Association, under that name, and not to named persons as trustees for that association. Laying aside the consideration that the proprietary trustees might voluntarily correct the ineffectual conveyance by a grant to trustees, to hold for the association, for the benefit of lot owners, or that the lot owners might require that to be done, the essential right of plaintiffs to object is confined to the question of the right of holders of the property to establish and operate a cemetery, and is not con-

cerned with the question of the strictly legal form of the arrangement attempted to be made by the owners, and those who, as lot owners, are to have the care of the property, and are to receive and hold the fund, the income of which is to be devoted to the care of the property.

Under the statutes in force at the time in question, the owners of the property could devote it to the uses of the cemetery.

The particular character of the instrumentality designed to care; for the cemetery, and to hold the trust fund provided for that purpose, and the legal status of such instrumentality, are questions of administration, which concern those having and acquiring interests in the property and in the fund, and are not questions of concern to plaintiffs in the way of constituting a ground for injunction against the use of the land for a cemetery.

Under the foregoing the conclusion results that the court did not err in sustaining the demurrer, and the judgment is affirmed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* absent.